IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re: <br><br> ESCO, Ltd.,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 23-12237 (DER) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER ESTABLISHING
PROCEDURES FOR THE REJECTION OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES**

ESCO, Ltd., as debtor and debtor-in-possession (the "**Debtor**") in the above-referenced chapter 11 case (the "**Chapter 11 Case**") hereby submits this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit A approving procedures for the rejection of executory contracts and unexpired leases and granting authority to take all actions necessary to implement such procedures, including abandonment of the Remaining Property (as defined below). In support of this Motion, the Debtor relies upon and incorporates by reference the *Declaration of Stanley W. Mastil, Chief Restructuring Officer, in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "**First Day Declaration**")[2] filed contemporaneously herewith. In further support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1.  The United States Bankruptcy Court for the District of Maryland (the "**Court**") has jurisdiction over the Chapter 11 Case, the Debtor, property of the Debtor's estate and this matter

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification are ESCO, Ltd., DBA Shoe City (5654). The Debtor's principal address is 1800 Woodlawn Drive, Gwynn Oak, Maryland 21207-4007.

[2] Capitalized terms but not defined herein shall have the meaning ascribed to such terms in the First Day Declaration.

88658787.3

under 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of the Chapter 11 Case in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested in this Motion are Sections 105, 365, and 554 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6006, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6006-1 of the Local Rules of the United States Bankruptcy Court for the District of Maryland (the "**Local Rules**").

## RELIEF REQUESTED

4. By this Motion, the Debtor seeks the entry of an order, substantially in the form attached hereto as Exhibit A, (a) establishing the Rejection Procedures and (b) authorizing the Debtor to take all actions necessary to implement the Rejection Procedures, including the rejection of Leases as of the Proposed Rejection Effective Date and the abandonment of the Remaining Property.

## BACKGROUND

**A.  General Background**

5. On March 31, 2023 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. The Debtor is authorized to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in this Chapter 11 Case. A meeting pursuant to section 341 of the Bankruptcy Code will be held on April 26, 2023 at 10:00 AM (EST), virtually.

7.      Additional factual background regarding the Debtor, including its business operations, capital structure and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the First Day Declaration, which is fully incorporated into this Motion by reference.

**B.      The Debtor's Dual-Track Lease Disposition Strategy**

8.      The Debtor commenced this Chapter 11 Case to effectuate an orderly wind down and to complete the Store Closings as quickly and efficiently as possible. In an effort to maximize value of the estate, the Debtor has engaged Gordon Brothers Realty, LLC (the "**Lease Consultant**") to review the Leases and determine which, if any can be monetized through a Court supervised sale process. Because the Lease Consultant has not yet performed its analysis, the Debtor does not know which, if any, of the Leases will attract market interest and which Leases should be promptly rejected to avoid the accrual of administrative rent expenses.

9.      To effectuate this dual-track disposition strategy, contemporaneously herewith the Debtor filed the *Debtor's Motion for Entry of an Order (I) Establishing Procedures to Sell Certain Leases; (II) Scheduling a Sale, Assumption, and Assignment Hearing; (III) Authorizing the Sale, Assumption, and Assignment of Leases; and (IV) Granting Related Relief* (the "**Lease Sale Motion**"). Through the Lease Sale Motion, the Debtor requests that the Court approve certain auction procedures for the sale of all the Debtor's Leases and conduct a Sale Hearing no later than May 25, 2023 at 1:30 p.m. (prevailing Eastern Time). The Debtor will revise the schedule of Leases subject to the Lease Sale Motion as the Lease Consultant continues its review of the Leases, and anticipates that it will need to remove certain Leases from the contemplated sale if it becomes apparent there is no market for such Leases.

10.     The lease rejection procedures described in this Motion (the "**Rejection Procedures**") are a key component of the Debtor's strategy in this Chapter 11 Case. The Rejection

3

Procedures, if approved, will allow the Debtor to quickly reject leases that are unlikely to yield value to the estate. The Debtor believes that it is likely that some Store Closings will finish before others, providing an opportunity to reject unprofitable Leases without needing to wait the additional days or weeks for the rest of the Store Closings to be completed. Conversely, if the Debtor, in consultation with the Lease Consultant, determines that there is or may be market interest in a particular Lease, the Debtor can submit that Lease to the auction process. Such flexibility is necessary in this Chapter 11 Case given the speed with which the Store Closings will occur and the Debtor's dire liquidity situation.

**C.     Proposed Lease Rejection Procedures**

11.     The Rejection Procedures outlined below will allow the Debtor to streamline the rejection process for the Leases it determines should be rejected, eliminate unnecessary administrative burdens, and conserve resources of the Debtor's estate.

12.     The proposed Rejection Procedures are as follows:

1) The Debtor will file a notice (the "**Rejection Notice**") setting forth the proposed rejection of one or more Leases and will serve such a notice by email and first class mail on: (i) the landlord under the respective Lease at the last known address available to the Debtor, and such landlord's counsel, if known; (ii) any official committee subsequently appointed in this Chapter 11 Case; (iii) counsel for the DIP Lender, Holland & Knight LLP, One Arts Plaza, 1722 Routh St., Suite 150, Dallas, TX 75201, Attn: Brent R. McIlwain (Brent.McIlwain@hklaw.com); and (iv) the Office of the United States Trustee, 101 W. Lombard St., Suite 2625, Baltimore, MD 21201, Attn: Hugh M. Bernstein (Hugh.M.Bernstein@usdoj.com).

2) The Rejection Notice will be substantially in the form attached to this motion as <u>Exhibit B</u>. The Rejection Notice will set forth the following, based on the best of the Debtor's information: (i) the name and address of the affected landlord; (ii) the date on or by which the Debtor has vacated or will vacate the Premises; (iii) the street address of the real property; and (iv) the proposed effective date of rejection of the Lease, which shall be the date of the Rejection Notice (the "**Proposed Rejection Effective Date**").

3) If a party in interest objects to the Debtor's proposed rejection of a Lease, such party must file and serve a written objection (an "**Objection**") so that

4

it is actually received by the following parties no later than fourteen (14) calendar days after the date the Rejection Notice is filed: (i) proposed counsel to the Debtor, Polsinelli PC, 222 Delaware Ave., Suite 1101, Wilmington, Delaware, 19801 Attn: Christopher A. Ward (cward@polsinelli.com), and Shanti M. Katona (skatona@polsinelli.com) (ii) counsel for the DIP Lender, Holland & Knight LLP, One Arts Plaza, 1722 Routh St., Suite 150, Dallas, TX 75201, Attn: Brent R. McIlwain (Brent.McIlwain@hklaw.com); and (iii) the Office of the United States Trustee, 101 W. Lombard St., Suite 2625, Baltimore, MD 21201, Attn: Hugh M. Bernstein (Hugh.M.Bernstein@usdoj.com) (collectively, the "**Objection Notice Parties**"). Each Objection must state with specificity the grounds for objection to the proposed rejection.

4) If no Objection to a Rejection Notice is timely filed and served with regard to a particular Lease, the applicable Lease shall be deemed rejected on the Proposed Rejection Effective Date; *provided, however*, that except as otherwise may be ordered by the Court or agreed in writing between the affected landlord and the Debtor, the rejection of the Lease shall occur upon the earlier of (i) the Proposed Rejection Effective Date identified in any Rejection Notice filed with this Court, or (ii) the date the Debtor relinquishes control of the premises by notifying the affected landlord in writing of the Debtor's surrender of the Premises and either (A) turns over keys and, if applicable, key codes and security codes, to the affected landlord or their property manager, or (B) notifies the affected landlord or their property manager in writing that the keys, key codes, and/or security codes, if any, are not available but that the landlord may rekey the leased premises (the "**Vacancy Date**"). The Vacancy Date may be such other date as may be agreed in writing between the affected landlord and the Debtor.

5) If a timely Objection to a Rejection Notice is filed and received in accordance with the Rejection Procedures, the Debtor shall seek to schedule a hearing on such Objection and shall provide at least three (3) days' notice of such hearing to the objecting party and the Objection Notice Parties. If the Court upholds the Debtor's determination to reject the applicable Lease, then such Lease shall be deemed rejected: (i) as of the earlier of the Proposed Rejection Effective Date or the Vacancy Date; or (ii) as otherwise determined by the Court as set forth in any order of the Court.

6) Any objection may be resolved without a hearing by an order of the Court submitted on a consensual basis by the Debtor and the objecting party.

7) Upon the Vacancy Date, any personal property or furniture fixtures and equipment remaining on the Premises (the "**Remaining Property**") shall be deemed abandoned by the Debtor free and clear of all liens and the applicable landlord will be free to remove, sell or otherwise dispose of the Remaining Property without further notice to any party and without any liability to the Debtor or any third party, *provided, however*, that to the

5

    extent the Debtor proposes to abandon computers (including software) and/or cash registers and any other point of sale equipment located at the Premises or any other files or records which may contain personal and/or confidential information about the Debtor's employees and/or customers (the "**Confidential Information**"), the Debtor shall remove the Confidential Information from such items before such abandonment, and unless otherwise notified by the Debtor in writing to the contrary, the applicable landlord shall be entitled to rely upon the Debtor having completed such steps at or prior to the time of any such abandonment.

8) Claims arising out of the rejection of Leases must be filed on or before the later of: (i) the deadline for filing proofs of claim established by the Court in the Debtor's Chapter 11 Case, (ii) thirty (30) days after the filing of the Rejection Notice, or (iii) thirty (30) days after the Proposed Rejection Effective Date. If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for rejection damages and from participating in any distributions that may be made in connection with this Chapter 11 Case.

9) If the Debtor has deposited funds with a landlord as a security deposit, such landlord may not setoff or otherwise use such deposit without the prior authority of the Court or agreement of the Debtor.

  13. In connection with the Rejection Procedures, the Debtor also requests that (a) it be authorized to: (i) execute and deliver all relevant instruments and documents; (ii) remove, in its sole discretion, personal property and fixtures that the Debtor has installed in or about the Premises, consistent with the Debtor's ownership rights and the pertinent Leases; (iii) remove, or facilitate the removal of, any personal property owned by any of the Debtor's former and current employees; and (iv) take such other actions as may be necessary or appropriate to implement and effectuate the Rejection Procedures as approved by the Court, and (b) upon the Vacancy Date, the affected landlord be authorized to: (i) enter the Premises to mitigate the appearance of a Store having "gone dark" and (ii) remove, sell or otherwise dispose of the Remaining Property.

**BASIS FOR RELIEF REQUESTED**

**I.      Rejection of Leases Reflects the Debtor's Sound Business Judgment.**

14.     Bankruptcy Code § 365(a) provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). "A debtor's decision to reject an executory contract or unexpired lease 'is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors.'" *In re Parking Mgmt., Inc.*, 620 B.R. 544, 552-53 (Bankr. D. Md. 2020) (quoting *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1046-47 (4th Cir. 1985)).

15.     In addition, "unless a separate provision of the Bankruptcy Code provides a non-debtor party with specific protection, the debtor and its estate's interests are paramount; adverse effects on the non-debtor contract party arising from the decision to assume or reject are irrelevant." *In re The Great Atlantic & Pacific Tea Co.*, 544 B.R. 43, 49 (Bankr. S.D.N.Y. 2016); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 123 (Bankr. D. Del. 2001) (observing that Courts have declined to consider potential burden imposed on nondebtor when considering whether to permit rejection).

16.     The Debtor has determined, in its business judgment after consultation with the Lease Consultant, that prompt rejection of certain Leases as Stores close may be in the best interest of the estate and the Debtor's creditors. Absent rejection of Leases that cannot be monetized through a sale, such Leases would continue to accrue expenses in the form of rent, insurance, and other charges. The Debtor believes that the Rejection Procedures provide the most efficient means for the Debtor to expeditiously reject those Leases that cannot be sold once they no longer serve any purpose for the estate.

7

## II. Abandoning the Remaining Property is an Exercise of the Debtor's Sound Business Judgment.

17. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Prior to abandoning any Remaining Property pursuant to the Rejection Procedures, the Debtor will have determined that the Remaining Property to be abandoned is either: (i) burdensome to the estate to the extent that removal and storage of this property is likely to exceed any net proceeds from the property, or (ii) of inconsequential value and benefit to the estate. *See e.g., Borden, Inc. v. Wells-Fargo Bus. Credit (In re Smith-Douglass, Inc.)*, 856 F.2d 12, 16 (4th Cir. 1988) ("Section 554 of the Code serves the purpose of expeditious and equitable distribution by permitting the trustee to abandon property that consumes the resources and drains the income of the estate."); *In re Contract Research Solutions, Inc.,* 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013) (where abandonment of property posed no threat to public safety and did not contravene any law or regulation; the debtor "need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon") (quoting *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997)).

18. Any Remaining Property at the Premises following the Store Closings will either have inconsequential value or a value less than the cost of removing and storing such property for future use or sale because the Debtor will no longer be operating the Stores. Moreover, none of the property that the Debtor may abandon will pose any threat to public safety, and the Debtor will ensure that any Confidential Information or personal property owned by the Debtor's former and current employees is removed prior to abandonment. Accordingly, abandonment of the Remaining

8

88658787.3

Property reflects the Debtor's exercise of business judgment and is in the best interest of the Debtor, its estate, creditors, and stakeholders.

### III.     The Rejection Procedures Provide Reasonable Notice and Hearing.

19.     Bankruptcy Rule 9014 provides, in part, that "reasonable notice and opportunity for hearing shall be afforded the party against whom the relief is sought." *See* Fed. R. Bankr. P. 9014(a).[3] The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for a hearing "as [are] appropriate in the particular circumstances").

20.     The Debtor's landlords will not be prejudiced by the Rejection Procedures because, prior to receipt of a Rejection Notice, they will have received notice of the Debtor's intent to possibly reject their Lease by notice of this Motion. Additionally, upon receipt of the Rejection Notice, the landlords will receive notice of the effective date of the rejection and opportunity to object. *See, e.g., In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject). Moreover, the Debtor intends to vacate the Premises upon the date specified in the Rejection Notice, thereby allowing the landlord to take possession of the property. *See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 608-09 (2d Cir. 2007) (affirming approval of retroactive rejection to date premises were surrendered).

---

[3] Bankruptcy Rule 9014 is made applicable to a motion to reject by Bankruptcy Rule 6006(a), which provides that "[a] proceeding to ... reject ... an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014." Fed. R. Bankr. P. 6006(a).

21.     The Debtor submits that the proposed Rejection Procedures balance the need for an expeditious reduction of burdensome costs to the Debtor's estate while providing appropriate notice of the proposed rejection to the Debtor's landlords. The proposed Rejection Procedures are appropriately tailored to minimize potential administrative expenses, maximize the recovery for creditors, and return control of the affected Premises to the landlords as quickly as possible.

22.     Similar relief has been granted in various other retail cases in this Court and Circuit. *See e.g., In re Creative Hairdressers, Inc., et al.*, Bankr. D. Md., Case No. 20-14583 (TJC) (Apr. 28, 2020); *In re Pier 1 Imports, Inc., et al.*, Bankr. E.D. Va., Case No. 20-30805 (KRH) (Mar. 19, 2020); *In re: Toys "R" Us Property Company I, LLC, et al.*, Bankr. E. D. Va., Case No. 18-31429 (KLP) (July 25, 2018).

## **COMPLIANCE WITH BANKRUPTCY RULE 6006(F)**

23.     Bankruptcy Rule 6006(f) establishes requirements for a motion to reject multiple executory contracts or unexpired leases that are not between the same parties. Bankruptcy Rule 6006(f) states, in part, that such a motion shall:

1)  state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

2)  list parties alphabetically and identify the corresponding contract or lease;

3)  specify the terms, including the curing of defaults, for each requested assumption or assignment;

4)  specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

5)  be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

6)  be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f).

24. The Debtor intends to fully comply with Bankruptcy Rule 6006(f) with respect to any and all notices provided under the Rejection Procedures, or any separate omnibus motion filed to reject contracts and/or leases. The Debtor respectfully submits that the Rejection Procedures comply with the requirements of Bankruptcy Rule 6006(f).

### STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 9013-2

25. Pursuant to Local Bankruptcy Rule 9013-2, the Debtor states that, in lieu of submitting a memorandum in support of this Motion, it will rely solely upon the grounds and authorities set forth herein.

### REQUEST FOR WAIVER OF STAY

26. To the extent that the relief sought in the Motion constitutes a use of property under Bankruptcy Code § 363(b), the Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtor requests that the Court find that the provisions of Local Rule 6006-1 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtor to promptly commence an orderly liquidation to maximize the value of its estate for the benefit of creditors.

### NOTICE

27. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Maryland; (ii) counsel to the Prepetition Secured Lender and the DIP Lender; (iii) the Debtor's 20 largest unsecured creditors; (iv) the Debtor's landlords; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested herein, no other or further notice need be given.

**WHEREFORE**, based on the foregoing, the Debtor respectfully requests that the Court (i) grant the Motion, and (ii) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: April 3, 2023 | **POLSINELLI PC** |

*/s D. Jack Blum*
D. Jack Blum (Bar No. 07241)
1401 Eye "I" Street, N.W.
Suite 800
Washington, DC 20005
Telephone: 202-772-8483
Facsimile: 202-315-2564
jack.blum@polsinelli.com

-and-

Christopher A. Ward (*pro hac vice* pending)
Shanti M. Katona (*pro hac vice* pending)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: 302-252-0920
Facsimile: 302-252-0921
cward@polsinelli.com
skatona@polsinelli.com
*Proposed Counsel to the Debtor
and Debtor in Possession*