**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

|  |  |
|---|---|
| In re:<br><br>ESCO, Ltd.,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No. 23-12237 (DER) |

## LINE FILING PLAN SUPPLEMENT FOR THE COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF DEBTOR ESCO, LTD.

ESCO, Ltd., the above-captioned debtor and debtor in possession, by and through its undersigned counsel, hereby files this Plan Supplement for the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Debtor ESCO, Ltd.* [Docket No. 328] which consists of the Liquidating Trust Agreement, attached hereto as Exhibit A, and a description of the Liquidating Trustee's experience and qualifications, which are attached hereto as Exhibit B.

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification are ESCO, Ltd., DBA Shoe City (5654). The Debtor's principal address is 1800 Woodlawn Drive, Gwynn Oak, Maryland 21207-4007.

Dated:  October 23, 2023                    **POLSINELLI PC**

*/s Christopher A. Ward*
Christopher A. Ward (admitted *pro hac vice*)
Shanti M. Katona (admitted *pro hac vice*)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: 302-252-0920
Facsimile: 302-252-0921
cward@polsinelli.com
skatona@polsinelli.com

-and-

D. Jack Blum (Bar No. 07241)
1401 Eye "I" Street, N.W.
Suite 800
Washington, DC 20005
Telephone: 202-772-8483
Facsimile: 202-315-2564
jack.blum@polsinelli.com

*Counsel to the Debtor*
*and Debtor in Possession*

## **EXHIBIT A**

## LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This liquidating trust agreement and declaration of trust (the "Agreement"), dated as of [•], 2023, is made by ESCO, Ltd. d/b/a Shoe City (the "Debtor"), and Steven Balasiano (the "Trustee," and together with the Debtor, each, a "Party" and collectively, the "Parties").

## RECITALS

A.    On March 31, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Case No. 23-12237 (DER).

B.    On [•], 2023, the Bankruptcy Court entered an order (the "Confirmation Order"),[1] confirming the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Debtor ESCO, Ltd.* [2]

C.    The Plan became effective on [•], 2023 (the "Effective Date").

D.    The Plan provides for the establishment of the Liquidating Trust ("Trust") effective on the Effective Date of the Plan.

E.    The Confirmation Order provides for the appointment of the Trustee as Liquidating Trustee of the Trust, and this Agreement provides for the appointment as necessary of any successor trustee of the Trust.

F.    The Trust is established for the benefit of the Liquidating Trust Beneficiaries entitled to Distributions under the Plan (collectively, "Beneficiaries").

---

[1]    Docket No. [•].

[2]    Docket No. 347.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

G.     The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Trust Assets (defined below) for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

H.     Pursuant to the Plan, the Debtor, Trust, Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

I.     The Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code of 1986, as amended ("IRC"), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

J.     The Trust is further intended to be exempt from the requirements of (i) the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, pursuant to section 1145 of the Bankruptcy Code, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained

in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtor and the Trustee enter into this Agreement to effectuate the Distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to section 6.05 of the Plan, paragraph [•] of the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidating Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "Trust Assets") are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, solely for the benefit of the Beneficiaries and for no other party; provided, however, that in the event that that the Wind-Down Reserve is overfunded, prior to the termination of the Trust, the Trustee shall pay any excess funds in the Wind-Down Reserve to the Reorganized Debtors.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER
## DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1    Recitals.  The Recitals are incorporated into and made terms of this Agreement.

1.2    Interpretation; Headings.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and

vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.3     Construction of Agreement. This Agreement shall not be construed to impair or limit in any way the rights of any Entity under the Plan.

1.4     Conflict Among Plan Documents.  In the event of any inconsistency between the Plan and the Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence.

## ARTICLE II
## ESTABLISHMENT OF TRUST

2.1     Effectiveness of Agreement; Name of Trust.  This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Shoe City Liquidating Trust."

2.2     Purpose of Trust.  The Debtor and the Trustee, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3     Transfer of Trust Assets.

2.3.1     Conveyance of Liquidating Trust Assets.  Pursuant to the Plan, the Debtor hereby grants, releases, assigns, transfers, conveys and delivers, on behalf of the Beneficiaries, the Liquidating Trust Assets to the Trust as of the Effective Date in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement and the Plan.  The

4

Debtor shall execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtor shall take or cause to be taken such further action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2   <u>Title to Trust Assets</u>. All of the Debtor's right, title and interest in and to the Liquidating Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust, free and clear of all liens, claims, encumbrances and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties and pursue, assert and/or and exercise all rights of setoffs and recoupment and defenses of the Debtor or its Estate to any counterclaims that may be asserted by any and all defendants as to Causes of Action and to Claims asserted against the Debtor or its Estate. On the Effective Date, the Trust shall stand in the shoes of the Debtor for all purposes with respect to the Trust Assets and administration of Claims. To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtor to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in section 2.3, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Trustee on behalf of the Trust hereby

5

accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4     <u>Capacity of Trust</u>.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5     <u>Cooperation of Plan Administrator and Debtor</u>.  The Debtor and its professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtor to the Trust of administration of the Trust Assets.

2.6     <u>No Retention of Excess Cash</u>.  Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities or to maintain the value of the Trust Assets during liquidation other than reserves established pursuant to sections 3.2.12, 3.2.20 and/or 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.7     <u>Acceptance by Trustee</u>.  The Trustee accepts its appointment as Liquidating Trustee of the Trust.

## ARTICLE III
## ADMINISTRATION OF TRUST

3.1    <u>Rights, Powers, and Privileges of Trustee Generally</u>.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1    <u>Power to Contract</u>.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Entity under the Plan, Confirmation Order, or this Agreement.

3.2    <u>Powers of Trustee</u>.  Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following

actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust or the duties of the Trust as set forth in the Plan, without further Bankruptcy Court approval unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1   hold legal title to the Trust Assets and to any and all rights of the Debtor and the Beneficiaries in or arising from the Trust Assets;

3.2.2   receive, manage, invest, supervise, protect, and where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of section 3.7 hereof;

3.2.3   open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4   cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

3.2.5   collect, sell, liquidate, transfer, assign, distribute and liquidate all Trust Assets on such terms as the Trustee deems necessary, appropriate or desirable;

3.2.6   protect and enforce the rights to the Trust Assets vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.7   investigate any Trust Assets, and any objections to Claims, and cause the Trust to seek the examination of any Entity pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.2.8   cause the Trust to employ and pay professionals, disbursing agents, and other agents and third parties pursuant to the Plan and this Agreement as Liquidating Trust Expenses;

3.2.9   cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the Trust Assets as Liquidating Trust Expenses;

3.2.10 cause the Trust to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve all Causes of Actions that are Trust Assets;

3.2.11  calculate and make all Distributions on behalf of the Trust provided for in, or contemplated by, the Plan and this Agreement;

3.2.12  establish, adjust, and maintain reserves for Disputed Claims required to be administered by the Trust;

3.2.13  cause the Trust to withhold from the amount distributable to any Entity the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws, regulations, rules, rulings, directors or other requirements of a Governmental Unit, and all distributions shall be net of the actual and reasonable costs of making such distributions;

3.2.14  in reliance upon the Debtor's schedules and the official Claims register maintained in the Debtor's chapter 11 case, review, and where appropriate, cause the Trust to allow, estimate or object to Claims, and, supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed Claims required to be administered by the Trust;

3.2.15  in reliance upon the Debtor's schedules and the official Claims register maintained in the Debtor's chapter 11 case, maintain a register evidencing the Liquidating Trust Interests and, in accordance with section 3.8 of this Agreement, such register may be the official Claims register maintained in the Debtor's chapter 11 case to the extent of any General Unsecured reflected thereon;

3.2.16  cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Regulation section 1.671-4 pursuant to and in accordance with Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust;

3.2.17  cause the Trust to file any and all remaining tax returns for the Debtor and the Estate, as applicable; provided, however, that notwithstanding any other provision of this Agreement, neither the Trust nor the Trustee shall have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtor's tax return(s) that are due to be filed after the Effective Date or for any tax liability related thereto.

3.2.18  cause the Trust to abandon or donate to a charitable organization any Trust Assets that the Trustee believes, in good faith, are burdensome to the Debtor or to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.2.19  cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

10

3.2.20  cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.21  pursuant to Section 6.10 of the Plan, act for the Debtor in the same capacity and have the same rights and powers as applicable to an officer, director, or Holder of an Interest in the Debtor, subject to the provisions of the Plan;

3.2.22  cause the winding up and dissolution of the Debtor;

3.2.23  move for a final decree closing the Debtor's chapter 11 case;

3.2.24  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.25  exercise, implement, enforce, and discharge all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.2.26  take all other actions consistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     Trustee as Representative of the Estates.  The Trust shall be vested with and entitled to assert all claims and causes of action that may constitute setoffs and defenses of the Debtor or the Trust to any Claims, and the Trust, acting by and through the Trustee, shall be the sole representative of the Estate under section 1123(b)(3) of the Bankruptcy Code with respect to any such claims or causes of action.

3.4     Abandonment.  If, in the Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right

to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization.

3.5     Responsibility for Administration of Claims.  From and after the Effective Date, the Trust shall become responsible for administering and paying Distributions to the Beneficiaries and to other Holders of Allowed Claims.  The Trust shall have the exclusive right to object to the allowance of any Claim on any ground, to file, withdraw or litigate to judgment objections to, to settle or compromise any Disputed Claims without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Debtor and its Estate.  The Trust shall also be entitled to assert all of the Debtor's and the Estate's rights under, without limitation, section 558 of the Bankruptcy Code.  The Trust may also seek estimation of any Claims under and subject to section 502(c) of the Bankruptcy Code.

3.6     Agents and Professionals.  The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtor or the Creditors' Committee.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trust or Trustee from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust.  The Trust may pay the reasonable salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of business as Liquidating Trust Expenses.

3.7     Safekeeping and Investment of Trust Assets.  All moneys and other assets received by the Trust, by and through the Trustee or otherwise, shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not

be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan. Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Trust or Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, and shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit or money market funds, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; provided, however, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Power, and Trusts Law of New York shall not apply to this Agreement. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8    <u>Maintenance and Disposition of Trust and Debtor Records</u>. The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust. The Trust may, but has no obligation to, engage a claims agent (including, but not limited to, the Claims Agent) to continue to maintain and update the Claims register maintained in the Debtor's chapter 11 case throughout the administration of the Trust. To the extent of any General Unsecured Claims reflected thereon, the Claims register

13

may serve as the Trustee's register of Liquidating Trust Interests held by Beneficiaries. The books and records maintained by the Trustee and any records of the Debtor transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.9     Reporting Requirements.   The Trustee shall provide the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.  In addition, the Trustee shall file all post-confirmation quarterly reports required in the Debtor's chapter 11 case consistent with Section 13.12 of the Plan until the date a final decree closing the case is obtained.

3.10     No Bond Required; Procurement of Insurance. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be a Liquidating Trust Expense and paid out of Trust Assets.

**ARTICLE IV**
**DISTRIBUTIONS**

4.1     Distribution and Reserve of Trust Assets.  Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets, subject to the reserves required under the Plan or this Agreement.

14

4.1.1    <u>Distributions</u>.  The Trustee shall cause the Trust to distribute, at least annually, the Trust's net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet Liquidating Trust Expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude Distributions to Beneficiaries.

4.1.2    <u>Reserves; Pooling of Reserved Funds</u>.  Before any Distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain the a reserve in an amount sufficient to meet any and all Liquidating Trust Expenses of the Trust.  In accordance with section 3.2.12 and 3.2.20 of this Agreement, the Trust may also maintain as necessary one or more reserves for Disputed Claims of Beneficiaries and other Claims required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any Distribution pending the Trust's determination of whether to object to a Claim.  Any such withheld Distribution shall become part of the Trust's reserve for Disputed Claims and shall be distributed to the appropriate Holder no later than the first Distribution Date after a decision is made not to object to the pertinent Claim or any such Claim becomes Allowed.  The Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; <u>provided</u>, <u>however</u>, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.3    <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the Distributions.

4.1.4   <u>Right to Rely on Professionals</u>.  Without limitation of the generality of section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

4.2   <u>Method and Timing of Distributions</u>.  Distributions to Beneficiaries will be made from the Trust in accordance with the terms of the Plan (in particular, Article VIII) and this Agreement.   The Trust may engage disbursing agents and other Persons to help make Distributions.

4.3   <u>Withholding from Distributions</u>.  The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.  The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

4.4   <u>Tax Identification Numbers</u>.  As more fully set forth in section 13.02 of the Plan, the Trustee may require any Beneficiary or any other Holder of a Claim to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any Distribution upon receipt of such identification number and/or tax form.  If a Beneficiary or any other Holder of a Claim does not timely provide the Trustee with its taxpayer identification number in the manner and by the 60-day deadline established under the Plan, then, at the sole discretion of

the Trust acting by and through the Trustee, (i) the Distribution may be made net of applicable withholding or (ii) the Distribution may be reserved, in which case (a) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, (b) any such Distribution shall revert to the Trust for all purposes, including for Distribution on account of other Allowed Claims, notwithstanding any federal, state, local, provincial, or escheat, unclaimed property or abandoned property law to the contrary, and (c) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court.

4.5     <u>Unclaimed and Undeliverable Distributions</u>.  If any Distribution to a Beneficiary or other holder of an Allowed Claim is returned to the Trustee as undeliverable or is otherwise unclaimed, no further Distributions to such Beneficiary or Holder shall be made unless and until the Beneficiary or Holder claims the Distributions by timely notifying the Trustee in writing of any information necessary to make the Distribution to the Beneficiary or Holder in accordance with this Agreement, the Plan, and applicable law, including such Beneficiary's or Holder's then-current address or taxpayer identification number.  If a Beneficiary or Holder timely provides the Trustee the necessary information within the 60-day period specified in section 8.02(e) of the Plan, all missed Distributions shall be made to the Beneficiary or Holder  as soon as is practicable, without interest. Undeliverable or unclaimed Distributions shall be administered in accordance with section 8.03(e) of the Plan.

4.5.1     <u>No Responsibility to Attempt to Locate Beneficiaries or other Holders of Allowed Claims</u>.  The Trustee may, in its sole discretion, attempt to determine a Beneficiary's or Claim Holder's current address or otherwise locate a Beneficiary or Holder, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.5.2    Disallowance of Claims; Cancellation of Corresponding Beneficial Interests.  All General Unsecured Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Trust for all purposes (including, but not limited to, for Distribution to other holders of other Allowed Claims) pursuant to section 8.03(e) or 13.02 of the Plan shall be deemed disallowed and expunged without further action by the Trust or Trustee and without further order of the Bankruptcy Court, and the corresponding Liquidating Trust Interest(s) of the Beneficiary holding such disallowed Claims shall be deemed canceled.  The Holder of any such disallowed General Unsecured Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such General Unsecured Claim.  The Holder of any such Disallowed General Unsecured Claim is forever barred, estopped, and enjoined from receiving any Distributions under the Plan or this Agreement and from asserting such Disallowed General Unsecured Claim against the Trust or Trustee.

4.5.3    Inapplicability of Unclaimed Property or Escheat Laws.  Unclaimed property held by the Trust shall not be subject to any federal, state or provincial escheat, unclaimed property or abandoned property law.

4.6    Voided Checks; Request for Reissuance.  In accordance with section 8.03(e) of the Plan, Distribution checks issued to Beneficiaries and other Holders of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof.  Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary or Holder that was originally issued such check.  All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets under section 4.5 of this Agreement.  The Beneficiary or Holder, as applicable, shall bear all the risk that, and shall indemnify and hold the Trust and Trustee harmless against any loss

18

that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance and the date established by section 8.03(e) of the Plan passes without the check being reissued or cashed.

4.7    <u>Conflicting Claims</u>.  If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.7.1    The Trustee may elect to cause the Trust to make no payment or Distribution with respect to the beneficial Liquidating Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.7.2    The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the

19

books and records maintained by the Trustee.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.7.3    In acting or refraining from acting under and in accordance with this section 4.7 of the Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Entity pursuant to Article VI of this Agreement.

4.7.4    De Minimis Distributions.  Consistent with Section 8.02(h) of the Plan, the Trustee shall have no obligation to make a Distribution on account of an Allowed General Unsecured Claim if the amount to be distributed to that holder on the particular Distribution Date is less than $100.00 ("De Minimis Distributions"); provided that if no distribution is made to a holder of an Allowed General Unsecured Claim pursuant to this Section 4.8, the amount of such distribution shall be added to any subsequent distribution(s) to such holder on account of such Allowed Claim until the distribution such holder is entitled to is $100 or higher.  In accordance with Section 8.02(h) of the Plan, if as of the final Distribution date, a holder is not entitled to $100 or more on a cumulative basis as set forth above, such De Minimis Distribution shall be cancelled, any such De Minimis Distribution shall vest in the Trust and become available for Distribution to the Holders of other Allowed General Unsecured Claims, and, in such event, the corresponding General Unsecured Claims shall be deemed expunged without further order of the Bankruptcy Court.

4.8    Priority of Expenses of Trust.  The Trust must pay or reserve for all of its expenses before making Distributions.

## ARTICLE V
## BENEFICIARIES

5.1    <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or the Debtors to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a beneficial interest herein which shall, subject to section 4.1 of this Agreement and the Plan, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan.

5.3    <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4    <u>No Right to Accounting</u>.  Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Entity shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Entity.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Trust Assets.

5.5    <u>No Standing</u>.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Entity upon or with respect to the Trust Assets.

5.6    <u>Requirement of Undertaking</u>.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7    <u>Limitation on Transferability</u>.  It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trustee may rely upon such proof without the requirement of any further investigation.

5.8    <u>Exemption from Registration</u>.  The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan or otherwise because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

5.9    <u>Delivery of Distributions</u>.  Subject to the terms of this Agreement, the Trustee shall cause the Trust to make Distributions to Beneficiaries in the manner provided in the Plan.

**ARTICLE VI**

**THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY**

6.1    <u>Parties Dealing With the Trustee</u>.  In the absence of actual knowledge to the contrary, any Entity dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets.  There is no obligation of any Entity dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2    <u>Exculpation</u>.  In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee, nor any director, officer, employer, employees, professional, agent, representative, successor, assign, or affiliate of the Trustee  (each, an "<u>Exculpated Party</u>" and collectively, the "<u>Exculpated Parties</u>") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions or investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs and expenses, including reasonable fees and disbursements (collectively referred to herein as "<u>Losses</u>"), whether or not in connection with litigation in which any Exculpated Party is a party or in enforcing this Agreement (including these exculpation provisions), as and when imposed on the Trustee, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Trustee' execution, delivery, and acceptance of or the performance or nonperformance of its obligations under this Agreement, the Plan or the Confirmation Order or as may arise by reason of any action, omission or error of an Exculpated Party; *provided, however*, that the foregoing limitation shall not apply to, Losses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review)

to have been primarily and directly caused by the fraud, gross negligence, willful misconduct, or criminal conduct of the Exculpated Party.

6.3     No Liability for Acts of Other Persons.  Every act taken or omitted, power exercised or obligation assumed by the Trustee or any other Exculpated Party pursuant to the provisions of this Agreement shall be held to be taken or omitted, exercised or assumed, as the case may be, by the Trustee or any Exculpated Party acting for and on behalf of the Trustee and not otherwise; provided, however, that none of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     No Liability for Acts of Predecessors.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment.  The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6     Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may conclusively rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.  The Trustee also may engage and consult with its legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered by the Trustee in reliance upon the advice of such counsel, agents, or advisors.

24

6.7    <u>No Liability For Acts Approved by Bankruptcy Court</u>.  The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and the Claims required to be administered by the Trust.  The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.8    <u>No Personal Obligation for Trust Liabilities</u>.  Entities dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Entity in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9    <u>Indemnification</u>.  The Trustee and any director, officer, employee, employer, professional, agent, representative, successor, assign, or affiliate of the Trustee (each, an "<u>Indemnified Party</u>" and, collectively, the "<u>Indemnified Parties</u>") shall, to the fullest extent of the law, be defended, indemnified and held harmless by the Trust from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses (collectively, the "<u>Indemnified Losses</u>"), including but not limited to attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Debtor, the Trust or the implementation or administration of the Plan or this Agreement, other than Indemnified Losses that are the result of fraud, gross negligence, willful misconduct, or criminal conduct of the Indemnified Party.

6.9.1    <u>Expense of Trust; Limitation on Source of Payment of Indemnification</u>.  All indemnification liabilities of the Trust under this section 6.9 shall be expenses of the Trust.  The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of

the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Entity shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

       6.9.2    <u>Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay</u>. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

       6.10    <u>No Implied Obligations</u>. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

       6.11    <u>Confirmation of Survival of Provisions</u>. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's, the Exculpated Parties' and the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## TAX MATTERS

7.1    <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Liquidating Trust Assets by the Debtor to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the Liquidating Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust.  The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

7.2    <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

7.3    <u>Tax Treatment of Reserves for Disputed General Unsecured Claims</u>.  The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed General Unsecured Claims, including (i) filing a tax election to treat any and all reserves for Disputed General Unsecured Claims as a Disputed Ownership Fund ("<u>DOF</u>") within the meaning of Treasury Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance

27

requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

7.4    <u>Valuation of Trust Assets</u>.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the date of inception of the Trust, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE VIII
### SELECTION, REMOVAL, REPLACEMENT
### AND COMPENSATION OF TRUSTEE

8.1    <u>Initial Trustee</u>.  The initial trustee shall be the Trustee.

8.2    <u>Term of Service</u>.  The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, dissolution, liquidation, incapacity, resignation or removal.  In the event that the Trustee's appointment terminates by reason of death, dissolution, liquidation, incapacity, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VI of this Agreement shall survive the death, dissolution, liquidation, incapacity, resignation or removal of any Trustee.

28

8.3    <u>Removal of Trustee</u>.  Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.4    <u>Resignation of Trustee</u>.  The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court.  The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee.  In the event of a resignation, the resigning Trustee shall render to the U.S. Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

8.5    <u>Appointment of Successor Trustee</u>.  Upon the death, dissolution, liquidation, incapacity, resignation or removal of a Trustee, any party in interest (including, in the case of resignation, the Trustee) may file a motion in the Bankruptcy Court to appoint a successor Trustee.  In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed (i) shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee and (ii) shall not have any liability or responsibility for the acts or omissions of any of its predecessor(s).  Any successor Trustee may be appointed to serve only on an interim basis.

8.6    <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7    <u>Trust Continuance</u>.  The death, dissolution, liquidation, incapacity, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8    <u>Compensation of Trustee and Costs of Administration</u>.  The Trustee shall receive fair and reasonable compensation for its services, which shall be a charge against and paid out of the Trust Assets, as follows: (i) a monthly fee of $5,000, (ii) 3% of the net amount recovered from the pursuit of all Causes of Actions that are Trust Assets, and (iii) reimbursement of reasonable and necessary expenses.  All costs, expenses, obligations and Liquidating Trust Expenses incurred by the Trust or Trustee (or professionals who may be employed by the Trust or Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be reserved for or paid by the Trust, solely from the Trust Assets, prior to any Distribution to the Beneficiaries or to Holders of any Allowed Claims.

8.9    <u>Appointment of Supplemental Trustee</u>.  If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or

limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property. The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE IX
## DURATION OF TRUST

9.1    <u>Duration</u>. Once the Trust becomes effective upon full execution of this Agreement and approval of the Bankruptcy Court, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2    <u>Termination on Payment of Trust Expenses and Distribution of Trust Assets</u>. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the Distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3    <u>Termination after Five Years</u>. If the Trust has not been previously terminated pursuant to section 9.2 hereof, on the fifth anniversary of the Effective Date, the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately

31

thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement, unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court upon motion made within the six-month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Trust Assets.

      9.4    <u>No Termination by Beneficiaries</u>.  The Trust may not be terminated at any time by the Beneficiaries.

      9.5    <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, which may be a motion for a final decree, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

# ARTICLE X
## MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>.    The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Holders at the addresses appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Trust or Trustee:
>
> [•]
>
> with a copy to its counsel:
>
> [•]

or to such other address as may from time to time be provided in written notice by the Trustee.

10.3    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, without giving effect to rules governing the conflict of laws.

10.4    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof,"

"herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6    <u>Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Entity can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation order and this Agreement.

10.7    <u>Amendment</u>.  This Agreement may be amended by written agreement of the Trustee and the Debtor or by order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

10.8    <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

10.10    <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.11    <u>Further Assurances</u>.  Without limitation of the generality of section 2.4 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take

all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12   Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13   Jurisdiction.  The Bankruptcy Court shall have jurisdiction regarding the Debtors Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Debtor's chapter 11 case, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

ESCO, Ltd. d/b/a Shoe City

By: _____

Its: _____

Steven Balasiano, not individually, but solely as Trustee of the Shoe City Liquidating Trust

By: _____

Its: _____

**EXHIBIT B**



Corporate Restructuring & Bankruptcy

BALASIANO &
ASSOCIATES, LLP

# Recent Plan Administrator, Liquidation Trustee Positions and Other Prominent Representations


**Court Appointed
Plan Administrator**


**Court Appointed
Liquidation  Trustee**


**Court Appointed
Claims Monitor**


**Court Appointed
Claims Monitor**


**Counsel to Court Appointed
Plan Administrator**


**Court Appointed
Liquidation Trustee**


**Court Appointed
Plan Administrator**


**Court Appointed
Avoidance Actions Trustee**


**Court Appointed
Liquidation Trustee**


**Counsel to Avoidance
Actions Trustee**


**Court Appointed
Liquidation Trustee**

Balasiano & Associates, LLP

# Other Representations



**Counsel to Trade Creditors on Creditors' Committee**



**Counsel to Trade Creditor on Creditors' Committee**



**Counsel to Trade Creditors on Creditors' Committee**



**Counsel to Trade Creditors on Creditors' Committee**



**Counsel to Trade Creditor on Creditors' Committee**



**Counsel to Trade Creditors on Creditors' Committee**



**Counsel to Trade Creditor on Creditors' Committee**



**Counsel to Trade Creditors on Creditors Committee**

2

# Other Representations



**Counsel to Trade Creditor**



**Counsel to Trade Creditor**



**Counsel to Trade Creditor**



**Counsel to Trade Creditor**



**Counsel to Trade Creditor**



**Counsel to Trade Creditor**



**Counsel to Multiple Trade Creditors**



**Counsel to Multiple Trade Creditors**



**Counsel to Multiple Trade Creditors**



**Counsel to Multiple Trade Creditors**

# Steven Balasiano

Member 347-905-5669        steven@balasianolaw.com



**EDUCATION:**
- JD St. University School of Law, 1987
- BA State University of New York at Binghamton, 1984

**BAR ADMISSIONS:**
- New York
- New Jersey

**COURT ADMISSIONS:**
- US District Court for the Southern District of NY
- US District Court for the Eastern District of NY
- US District Court New Jersey

Steven Balasiano is the founding member of Balasiano & Associates and MHR Advisory Group, LLC. Steven is a trusted business and legal advisor. Bringing to his clients a wealth of business, legal and practical advice from his experience leading multiple apparel, retail and manufacturing companies.

Particular expertise in representing and maximizing recoveries for trade creditors in retail and consumer goods bankruptcy cases across the country. Acts as the Bankruptcy Court Appointed Liquidation Trustee and/or Plan Administrator in many Bankruptcies across the country. Counsel and advisor to significant trade creditors and creditor committee members in various retail bankruptcies, including Francesca's Ascena, True Religion, J Crew, Modell's Sporting Goods, Sears, Rue 21, Charming Charlie, Wet Seal, Payless, National Stores, Nine West.

Steven's practice is built upon coupling his strong legal background with his actual direct business and operational experience, After completing many years honing his legal acumen in the Bankruptcy Departments at Kelley Drye & Warren and Stroock, he leap frogged into many exciting business roles first as the Chief Administrative Officer at The Children's Place Retail Stores, President of an apparel manufacturing company with factories in Sri Lanka, Leader of a global apparel sourcing company with offices through out Asia and South East Asia, President of a multi branded private label children's apparel company, Senior leadership at Enchante Accessories an importer of home accessories as well as many other high profile engagements and assignments.



**BALASIANO & ASSOCIATES, PLLC**

**6701 Bay Parkway, Suite 300**

**Brooklyn, New York 11204**

# Steven Balasiano — C Level Executive

steven@mhradvisory.com | 201.328.2977

Growth strategist and skilled operator with leadership experience on both the manufacturing and retail sides of the business. A seasoned Business Leader, Advisor and Practicing Attorney

## Executive Career History & Highlights

**BALASIANO & ASSOCIATES/MHR ADVISORY GROUP** | New York, NY                **2013-Present**

Provide post confirmation and strategic business and advisory services in the consumer goods industry

- Serve as the Liquidation Trustee of Furniture Factory Outlet
- Serve as the Liquidation Trustee of  Modell's Sporting Goods
- Serve as the Liquidation Trustee of  The Collected Group
- Serve as the Avoidance Action Trustee of True Religion
- Serve as the Liquidation Trustee of SFP Franchise Corp. (Papyrus Stores)
- Serve as Plan Administrator for Stage Stores
- Serve as the Liquidation Trustee of Rockport Shoe Company.
- Represent multiple trade creditors in Bankruptcy & Workouts including, Global Brands, Francesca's, True Religion, Wet Seal, Payless, Nine West, Charming Charlie, Rue 21, Sears, National Stores, etc.
- Advise and Consult purchaser of Hurley Retail Stores, from Nike.
- Acting Advisor  and Consultant to  Enchante Accessories, one of the leaders in home accessories and home décor in the United States, Mexico and Canada.
- Interim President of Cutie Pie Baby a $100 million multi branded private label children's apparel & accessory company.
- Consultant and Advisor to Sequential Brands Group to develop retail launch strategies for their brands.

**COMTEX US, A HIRDARAMANI COMPANY** | New York, NY                **2010 – 2012**

$500M global sourcing company with 8 buying offices in Asia and manufacturing facilities in Vietnam and Bangladesh
**PRESIDENT** | Establish US market presence, build NYC office and leverage company's global infrastructure

- **New US Operation:** Built new office from the ground up with 6-member cross-functional team (Finance, Design, Merchandising and Sales). Strengthened existing customer relationships and synchronized business efforts.
- **Business Growth:** Capitalizing on industry network, earned $5M in new business within one year from leading brands, including The Children's Place, Perry Ellis, Warnaco, Oakley and Lane Bryant.

**VENTURA ENTERPRISE/STAR GARMENTS** | New York, NY /Sri Lanka                **2007 – 2010**

**PRESIDENT** | P&L accountability for $100M+ apparel manufacturer with 7 factories in Sri Lanka, 10,000-member organization and Executive Team across Finance, Sales & Marketing and Production.

Strengthen operations, productivity and financial management for business with major accounts, including Ann Taylor, Abercrombie & Fitch, Victoria's Secret, Liz Claiborne and Marc Jacobs.

**THE CHILDREN'S PLACE RETAIL STORES, INC.** | Secaucus, NJ                **1995 – 2007**

**SVP, CHIEF ADMINISTRATIVE OFFICER (2004 – 2007) $800M budgetary responsibility**

Led 100-member+ direct organization across Store Development (Real Estate, Store Design & Construction, Facilities Management), Non-Merchandise Strategic Sourcing, HR & Legal

**VP, HEAD OF OUTLET STRATEGY, HR & LEGAL (1999 – 2004)**

Served on 4-member Senior Executive Team to develop growth strategy, build fundamental structure and processes and lead organization through rapid expansion period, with company growing from $70M to $2.3B and 70 to 1,200 stores (combined Children's Place and Disney retail store portfolio).

**VP, HEAD OF HR & LEGAL (1997 – 1999) VP, GENERAL COUNSEL & CORPORATE SECRETARY (1995 – 1997)**

- **Retail Store Growth:** Developed multiple store concepts and comprehensive real estate strategy to fuel accelerated growth, opening up to 125+ stores annually, and spearheaded outlet expansion plans, growing to 100+ locations. Formalized approach to evaluate ongoing store performance and determine capital investments, and expedited store launch timeline through continual process reengineering.

**Steven Balasiano** | steven@mhradvisory.com | 201.328.2977                          Page 2

- **North American Expansion:** Penetrated Canadian market, leading small retail company acquisition, business integration and growth plans, expanding to 75 stores.
- **Disney Store Acquisition & Integration:** Led due diligence and deal term negotiations for 325-store acquisition from the Walt Disney Company and business integration plans.
- **Non-Merchandise Sourcing Transformation:** Elevated traditional procurement function to strategic sourcing operation, and introduced enterprise policies and processes to effectively manage $800M expense budget.
- **Optimized Business Support Structure**: Built regional Store Development and HR organizations from the ground up to align with field business teams that drove significant improvements in efficiencies, accountability and results. Instituted best-in-class HR practices to support corporate population growth from 100 to 1000+ employees.
- **Financial Structuring, IPO & Corporate Governance:** Recapitalized business through private equity funding source following bankruptcy and spearheaded plans to take company public, with subsequent secondary offering. Structured several subsidiary companies, serving on the Board of Directors, and developed corporate tax planning strategies.

## Earlier Law Career

**STROOCK & STROOCK & LAVAN LLP** | New York, NY                          1992 – 1995
**SENIOR ASSOCIATE, Corporate Restructuring**

**KELLEY DRYE & WARREN LLP** | New York, NY                          1987 – 1992
**ASSOCIATE, Litigation & Bankruptcy**

## Board Service & Strategic Retail Advisory Roles

**Council Member, GLG (Gerson Lehrman Group) and DeMatteo Monness**
Among select group of leaders repeatedly tapped for industry expertise as a consultant/panelist to advise financial industry on investment decisions within the retail and manufacturing sectors.
**Treasurer, SBH Community Services Organization** | Non-profit providing social, mental health, job placement and financial services to 50,000 community members.
**Co-founder and Board Member for several private elementary and high schools**
**Board Member, National Council for Disabled Youth**

## Education

Juris Doctorate | St. John's University School of Law | Queens, NY
Bachelor of Arts, Political Science | SUNY Binghamton | Binghamton, NY