Entered: November 16th, 2023
Signed: November 16th, 2023

**SO ORDERED**



**DAVID E. RICE**
**U. S. BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re:<br><br>ESCO, Ltd.,[1]<br><br>    Debtor. | Chapter 11<br><br>Case No. 23-12237 (DER) |

**ORDER GRANTING FINAL APPROVAL OF DISCLOSURE STATEMENT AND**
**CONFIRMING CHAPTER 11 PLAN OF LIQUIDATION OF DEBTOR ESCO, LTD.**

WHEREAS, Debtor ESCO, Ltd. has proposed and filed with the United States Bankruptcy

Court for the District of Maryland: (a) the *Combined Disclosure Statement and Chapter 11 Plan*

*of Liquidation of Debtor ESCO, Ltd.* (the "**Combined Disclosure Statement and Plan**") [Docket

No. 347]; and (b) the *Motion of Debtor for an Order (I) Approving the Adequacy of the Disclosures*

*in the Combined Disclosure Statement and Plan on an Interim Basis; (II) Scheduling the*

*Confirmation Hearing and Deadline for Filing Objections; (III) Establishing Procedures for the*

*Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and*

*Plan; (IV) Approving the Form of Ballot and Solicitation Packages; and (V) Granting Related*

*Relief* [Docket No. 329] (the "**Motion**");

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification are ESCO, Ltd., DBA Shoe City (5654). The Debtor's principal address is 1800 Woodlawn Drive, Gwynn Oak, Maryland 21207-4007.

WHEREAS, on September 21, 2023, the Bankruptcy Court[2] entered the *Order (I) Approving the Adequacy of the Disclosures in the Combined Disclosure Statement and Plan on an Interim Basis; (II) Scheduling the Confirmation Hearing and Deadline for Filing Objections; (III) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (IV) Approving the Form of Ballot and Solicitation Packages; and (V) Granting Related Relief* [Docket No. 351] (the "**Conditional Approval and Procedures Order**");

WHEREAS, due and adequate notice of the Confirmation Hearing has been given to holders of Claims and Interests against the Debtor and other parties in interest by the mailing of the *Notice of Order (I) Approving the Adequacy of the Disclosures in the Combined Disclosure Statement and Plan on an Interim Basis; (II) Scheduling the Confirmation Hearing and Deadline for Filing Objections; (III) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (IV) Approving the Form of Ballot and Solicitation Packages; and (V) Granting Related Relief* (the "**Confirmation Notice**"), as set forth in the *Certificate of Service*, dated October 11, 2023 [Docket No. 369] (the "**Confirmation Notice Affidavit**");

WHEREAS, approved ballots for voting on the Combined Disclosure Statement and Plan (the "**Ballots**") have been duly transmitted to Holders of Claims that are entitled to vote;

WHEREAS the *Declaration of Clarissa Cu of Stretto, Inc. Regarding the Solicitation and Tabulation of Votes Cast on the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Debtor Esco, Ltd.* [Docket No. 381] (the "**Stretto Declaration**") was filed

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Combined Disclosure Statement and Plan.

containing a tabulation of all valid Ballots received (the "**Tally of Ballots**") and demonstrating acceptance of the Combined Disclosure Statement and Plan by Class 2;

WHEREAS, the Debtor has filed the *Declaration of Stanley W. Mastil, Chief Restructuring Officer, in Support of Confirmation of the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Debtor ESCO, Ltd.* [Docket No. 384] (the "**Mastil Declaration**"); and

WHEREAS, on November 15, 2023, the Bankruptcy Court conducted a hearing on the Combined Disclosure Statement and Plan (the "**Confirmation Hearing**");

NOW, THEREFORE, based upon the Bankruptcy Court's consideration of the entire record of the Chapter 11 Case, including, among other things: (i) the Combined Disclosure Statement and Plan; (ii) the Motion; (iii) the Confirmation Notice Affidavit; (iv) the Mastil Declaration; (v) the Tally of Ballots; (vi) any objections to the Combined Disclosure Statement and Plan; and (vii) the Confirmation Hearing, and the Bankruptcy Court having found that the Combined Disclosure Statement and Plan is confirmable and all objections thereto have either been settled, withdrawn, or overruled; and after due deliberation and sufficient cause appearing therefor, the Bankruptcy Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

## I.    FINDINGS

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.  The Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. § 1334. Approval and confirmation of the Combined Disclosure Statement and Plan are core proceedings

pursuant to 28 U.S.C. § 157(b), and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto.

C.    <u>Disclosure Statement</u>.  The Disclosure Statement contains adequate information within the meaning of § 1125 of the Bankruptcy Code.

D.    <u>Voting</u>.  Votes to accept or reject the Combined Disclosure Statement and Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, the solicitation process set forth in the Conditional Approval and Procedures Order, and applicable nonbankruptcy law.

E.    <u>Solicitation</u>.  The Combined Disclosure Statement and Plan, the Ballots, and the Confirmation Notice were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Conditional Approval and Procedures Order. The forms of the Ballot adequately addressed the particular needs of the Chapter 11 Case and comply with all applicable laws.

F.    <u>Good Faith</u>.  The Debtor has not engaged in any collusive or unfair conduct in connection with the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan was negotiated and conducted at arms-length and without collusion with any person or entity.

G.    <u>Notice</u>.  The transmittal and service of the Combined Disclosure Statement and Plan, the Confirmation Notice, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing and all deadlines relating thereto have been given due, proper, timely, and adequate notice.  No other or further notice is required.

H.      <u>Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Combined Disclosure Statement and Plan complies with the applicable provisions of the Bankruptcy Code and satisfies § 1129(a)(1) of the Bankruptcy Code.

I.      <u>Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtor has complied with all applicable provisions of the Bankruptcy Code, satisfying the requirements of § 1129(a)(2) of the Bankruptcy Code.

J.      <u>Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Combined Disclosure Statement and Plan was proposed in good faith and not by any means forbidden by law, thereby satisfying § 1129(a)(3) of the Bankruptcy Code.

K.      <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Chapter 11 Case, or in connection with the Combined Disclosure Statement and Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying § 1129(a)(4) of the Bankruptcy Code.

L.      <u>Liquidating Trustee, Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtor has complied with § 1129(a)(5) of the Bankruptcy Code. The identity of the Liquidating Trustee (Steven Balasiano) has been identified and is consistent with the interests of Holders of Claims and Interests in the Debtor and public policy.

M.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  After confirmation of the Combined Disclosure Statement and Plan, the Debtor's business will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission. Thus, § 1129(a)(6) of the Bankruptcy Code is satisfied.

91901875.4

N.      <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Combined Disclosure Statement and Plan satisfies § 1129(a)(7) of the Bankruptcy Code. Each Holder of an impaired Claim or Interest either has accepted the Combined Disclosure Statement and Plan or will receive or retain under the Combined Disclosure Statement and Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

O.      <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Holders of Interests in Class Three are deemed to have rejected the Combined Disclosure Statement and Plan.  As found and determined below, pursuant to § 1129(b)(1) of the Bankruptcy Code, the Combined Disclosure Statement and Plan may be confirmed notwithstanding the fact that Class Three is Impaired and deemed to have rejected the Combined Disclosure Statement and Plan.  Holders of Claims in Class One are not Impaired under the Combined Disclosure Statement and Plan and are deemed to have accepted the Combined Disclosure Statement and Plan. Holders of Claims in Class Two are Impaired by the Combined Disclosure Statement and Plan and were entitled to vote. Class Two voted to accept the Combined Disclosure Statement and Plan.

P.      <u>Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Allowed Administrative Expense Claims under the Combined Disclosure Statement and Plan satisfies the requirements of § 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Allowed Priority Tax Claims pursuant to the Combined Disclosure Statement and Plan satisfies the requirements of § 1129(a)(9)(C) of the Bankruptcy Code.

Q.      <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Holders of Claims in Class 2 are Impaired and voted to accept the Combined Disclosure Statement and Plan, determined

without including any acceptance of the Combined Disclosure Statement and Plan by any insider, thereby satisfying the requirements of § 1129(a)(10) of the Bankruptcy Code.

R.      Feasibility (11 U.S.C. § 1129(a)(11)).  The Combined Disclosure Statement and Plan provides for the Debtor's assets already liquidated or to be liquidated over time to be distributed to creditors pursuant to the Combined Disclosure Statement and Plan, the Liquidating Trust Agreement, and Bankruptcy Code, thereby satisfying the requirements of § 1129(a)(11) of the Bankruptcy Code.

S.      Payment of Fees (11 U.S.C. § 1129(a)(12)).  The Combined Disclosure Statement and Plan provides that on the Effective Date, and thereafter as may be required, the Debtor shall pay all fees payable pursuant to § 1930 of title 28 of the United States Code, thereby satisfying § 1129(a)(12) of the Bankruptcy Code.

T.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13).  Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

U.      No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  Section 1129(a)(14) of the Bankruptcy Code is inapplicable.

V.      The Debtor Is Not an Individual (11 U.S.C. § 1129(a)(15)).  Section 1129(a)(15) of the Bankruptcy Code is inapplicable.

W.      No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  Section 1129(a)(16) of the Bankruptcy Code is inapplicable.

X.      Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)).  Holders of Interests in Class Three are deemed to have rejected the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Class, as required by §§ 1129(b)(1) and (b)(2) of the

Bankruptcy Code. Thus, the Combined Disclosure Statement and Plan may be confirmed notwithstanding the deemed rejection of the Combined Disclosure Statement and Plan by Class Three.

Y.      <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  Section 1129(c) of the Bankruptcy Code is inapplicable.

Z.      <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Combined Disclosure Statement and Plan is not the avoidance of taxes or the avoidance of the application of § 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Combined Disclosure Statement and Plan on any such grounds. Therefore, the Combined Disclosure Statement and Plan satisfies the requirements of § 1129(d) of the Bankruptcy Code.

AA.      <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  The Debtor and its agents, successors, predecessors, control persons, members, officers, directors, employees and their respective attorneys, financial advisors, accountants, and other professionals retained by such persons, have acted in "good faith" within the meaning of § 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances of the Combined Disclosure Statement and Plan and their participation in the activities described in § 1125 of the Bankruptcy Code, and, therefore, are not, and on account of such solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Combined Disclosure Statement and Plan and are entitled to the protections afforded by § 1125(e) of the Bankruptcy Code and, to the

extent such parties are listed therein, the exculpation and release provisions set forth in the Combined Disclosure Statement and Plan.

BB.    Based on the foregoing, the Combined Disclosure Statement and Plan satisfies the requirements for confirmation set forth in § 1129 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS, BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND, HEREBY <u>ORDERED</u>, <u>ADJUDGED</u>, AND <u>DECREED</u> THAT:**

1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.    <u>Notice of the Confirmation Hearing</u>.  Notice of the Confirmation Hearing and all deadlines relating thereto complied with the terms of the Conditional Approval and Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.    <u>Disclosure Statement</u>.  The Disclosure Statement is approved on a final basis as containing adequate information within the meaning of § 1125 of the Bankruptcy Code.

4.    <u>Solicitation</u>.  The solicitation of votes on the Combined Disclosure Statement and Plan complied with the Conditional Approval and Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

5.    <u>Ballots</u>.  The form of Ballot is approved in all respects.

91901875.4

6.     <u>Confirmation of the Combined Disclosure Statement and Plan</u>.  The Combined Disclosure Statement and Plan, annexed hereto as **<u>Exhibit A</u>**, and each of its provisions, shall be, and hereby are, approved and confirmed under § 1129 of the Bankruptcy Code.

7.     <u>Objections Resolved or Overruled</u>.  All objections, responses, statements, and comments, if any, in opposition to the Combined Disclosure Statement and Plan, other than those withdrawn with prejudice, waived, or settled prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety.

8.     <u>Implementation of the Combined Disclosure Statement and Plan</u>.  The Debtor and the Liquidating Trustee are hereby authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.

9.     <u>Unexpired Leases</u>. Notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan, Plan Supplement, this Confirmation Order, or any other documents related to the foregoing, nothing shall modify or restrict the rights, if any, of any Holder of an Allowed Claim related to Unexpired Leases to assert any right of setoff or recoupment that such party may have under the terms of the Unexpired Lease or applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of an Unexpired Lease with the Debtor or any successors to the Debtor under the Combined Disclosure Statement and Plan, (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtor or any successor to the Debtor.

91901875.4

10.    <u>Liquidating Trust</u>. Entry into the Liquidating Trust Agreement and the establishment of the Liquidating Trust are in the best interests of the Debtor and the Debtor's Estate.

11.    <u>Liquidating Trustee</u>. The appointment of Steven Balasiano to serve as the Liquidating Trustee is in the best interests of the Debtor and the Debtor's Estate and is approved. The Liquidating Trust Agreement is hereby approved and shall, upon the Effective Date, be valid, binding, and enforceable in accordance with its terms.

12.    <u>Inconsistency</u>.  To the extent of any inconsistency between this Confirmation Order and the Combined Disclosure Statement and Plan, this Confirmation Order shall govern.

13.    <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Case and the Combined Disclosure Statement and Plan to the fullest extent legally permissible.

14.    <u>Immediate Effect of Order</u>. This Confirmation Order is a final order which shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e) or otherwise.

15.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Combined Disclosure Statement and Plan in this Confirmation Order shall not diminish the effectiveness of such provision, nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Combined Disclosure Statement and Plan is confirmed in its entirety and incorporated herein by this reference.

cc:    Jack Blum, Esquire
       Polsinelli PC
       1401 Eye Street, N.W.
       Suite 800
       Washington, DC 20005

91901875.4

Christopher A. Ward
Shanti M. Katona
Polsinelli PC
222 Delaware Ave., Suite 1101
Wilmington, DE 19801

Gerard R. Vetter, Assistant United States Trustee
Office of the United States Trustee
101 W. Lombard St., Suite 2625
Baltimore, MD 21201

Brent R. McIlwain
Holland & Knight LLP
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, TX 75201

Gary H. Leibowitz
H.C. Jones III
Cole Schotz P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231

James S. Carr
Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007

Sean T. Wilson
Kelley Drye & Warren LLP
515 Post Oak Blvd., Suite 900
Houston, TX 77027

**END OF ORDER**

91901875.4

# **EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re:<br><br>ESCO, Ltd.,[1]<br><br>     Debtor. | Chapter 11<br><br>Case No. 23-12237 (DER) |

**COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF
<u>LIQUIDATION OF DEBTOR ESCO, LTD.</u>**

**POLSINELLI PC**
Christopher A. Ward (admitted *pro hac vice*)
Shanti M. Katona (admitted *pro hac vice*)
Katherine M. Devanney (admitted *pro hac vice*)
Michael V. DiPietro (admitted *pro hac vice*)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com
kdevanney@polsinelli.com
mdipietro@polsinelli.com

-and-

D. Jack Blum (Bar No. 07241)
Tony W. Torain (Bar No. 19010)
1401 Eye "I" Street, N.W., Suite 800
Washington, DC 20005
Telephone: 202-772-8483
Facsimile: 202-315-2564
jack.blum@polsinelli.com
twtorain@polsinelli.com

*Counsel to the Debtor and Debtor in Possession*

Dated: September 19, 2023

---

[1] The Debtor in this Chapter 11 case and the last four digits of its federal tax identification are ESCO, Ltd., DBA Shoe City (5654). The Debtor's principal address is 1800 Woodlawn Drive, Gwynn Oak, Maryland 21207-4007.

89856667.15

# TABLE OF CONTENTS

DISCLAIMER………………………………………………………………………………1

INTRODUCTION ..................................................................................................................2

ARTICLE I:        DEFINITIONS AND CONSTRUCTION OF TERMS ....................2

ARTICLE II:       BACKGROUND ....................................................................................10

    2.01    General Background .................................................................................. 10

        (a)    The Debtor's History ................................................................10

        (b)    The Debtor's Prepetition Debt Structure and Related Liens ....................10

        (c)    Events Leading to the Chapter 11 Case ...................................................11

    2.02    The Chapter 11 Case ................................................................................ 12

        (a)    The Debtor's Bankruptcy Filings and First Day Motions ........................12

        (b)    The Debtor's CRO, Consultants, and Retained Professionals ..................12

        (c)    Appointment of the Creditors' Committee ................................................13

        (d)    Store Closing and FF&E Sales ................................................................13

        (e)    The Debtor's Unsuccessful Asset Sale Process .......................................13

        (f)    The Debtor's Motion to Reject Certain Executory Contracts and Unexpired Leases ..........................................................................................13

        (g)    The Key Employee Retention Plan ...........................................................13

        (h)    Claims Bar Dates ....................................................................................14

        (i)    Extension of Exclusivity Period................................................................14

        (j)    The Insiders and Creditors' Committee Investigation ..............................14

ARTICLE III:      CONFIRMATION PROCEDURES ........................................................15

    3.01    Confirmation Procedures ......................................................................... 15

    3.02    Procedure for Objections ......................................................................... 15

    3.03    Requirements for Confirmation ............................................................... 16

    3.04    Classification of Claims and Interests...................................................... 16

    3.05    Impaired Claims or Equity Interests ........................................................ 16

    3.06    Feasibility................................................................................................ 17

    3.07    Best Interests Test and Liquidation Analysis........................................... 17

    3.08    Acceptance of the Plan............................................................................. 17

i

ARTICLE IV:     CLASSIFICATION OF CLAIMS AND INTERESTS AND
                EXPECTED RECOVERIES ................................................................ 18

    4.01     Overview of Classification ................................................................ 18

    4.02     Identification and Treatment of Unclassified Claims ......................... 18

    4.03     Identification of Classes of Claims .................................................... 19

    4.04     Treatment of Classified Classes, Rights to Vote, and Estimated
             Distributions ....................................................................................... 20

    4.05     Elimination of Classes for Voting Purposes ...................................... 21

    4.06     Insurance ............................................................................................ 21

ARTICLE V:      CERTAIN RISK FACTORS TO BE CONSIDERED
                PRIOR TO VOTING ........................................................................ 21

ARTICLE VI:     MEANS FOR IMPLEMENTATION OF THE PLAN .................... 23

    6.01     Initial Liquidating Trustee ................................................................. 23

    6.02     Dissolution ......................................................................................... 23

    6.03     Release of Liens and Security Instruments ........................................ 23

    6.04     Cancellation of Notes and Instruments .............................................. 23

    6.05     Vesting and Sale or Other Disposition of Assets; Representative of
             the Estate; Liquidating Trust Expenses .............................................. 23

    6.06     Purpose of Liquidating Trust ............................................................. 24

    6.07     Preservation of All Causes of Action and Standing ........................... 24

    6.08     Effectuating Documents and Further Transactions ............................ 24

    6.09     The Liquidating Trust Agreement ...................................................... 25

    6.10     Powers of the Liquidating Trust and Liquidating Trustee ................. 25

    6.11     Limitation of Liability and Indemnification ...................................... 25

    6.12     United States Federal Income Tax Treatment of the Liquidating Trust ............. 27

    6.13     Insurance Policies .............................................................................. 27

    6.14     Dissolution of Creditors' Committee ................................................. 27

    6.15     Transfer of Privilege/No Waiver ....................................................... 27

    6.16     Termination of the Claims Agent ....................................................... 28

    6.17     Records ............................................................................................... 28

    6.18     Final Decree ....................................................................................... 28

ARTICLE VII:    EXECUTORY CONTRACTS ......................................................... 28

    7.01     Rejection of Executory Contracts and Unexpired Leases ................. 28

    7.02     Bar Date for Rejection Damages Claims ........................................... 29

89856667.15

7.03    Pre-Existing Obligations to the Debtor Under Executory Contracts ................... 29

ARTICLE VIII:   PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND DISTRIBUTIONS OF ASSETS UNDER THE PLAN .................. 29

8.01    Claim Objections ................................................................... 29

8.02    Distribution Provisions ........................................................... 29

ARTICLE IX:      RELEASES, INJUNCTION, AND RELATED PROVISIONS .................. 31

9.01    Reserved ............................................................................. 31

9.02    Reserved ............................................................................. 31

9.03    Reserved ............................................................................. 31

9.04    Exculpation and Limitation of Liability ................................... 31

9.05    Injunctions .......................................................................... 31

ARTICLE X:       CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ............... 33

10.01   Conditions Precedent to Confirmation ................................... 33

10.02   Conditions Precedent to the Effective Date ............................ 33

10.03   Waiver of Conditions .......................................................... 33

10.04   Effect of Failure of Conditions ............................................. 34

10.05   Filing of Notice of the Effective Date .................................... 34

ARTICLE XI:      MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN ........... 34

11.01   Modification and Amendments .............................................. 34

11.02   Effect of Confirmation on Modifications ................................ 34

11.03   Revocation or Withdrawal of the Plan ................................... 34

ARTICLE XII:     JURISDICTION ................................................................. 34

12.01   Bankruptcy Court Jurisdiction .............................................. 34

12.02   Limitation on Jurisdiction .................................................... 36

ARTICLE XIII:    MISCELLANEOUS ............................................................. 36

13.01   Exemption from Taxes ........................................................ 36

13.02   Compliance with Tax Requirements ...................................... 36

13.03   Defenses and Setoff ............................................................ 37

13.04   Governing Law .................................................................. 37

13.05   Successors and Assigns ....................................................... 37

13.06   Transfer of Claims and Distribution Record Date ................... 38

13.07   Post-Effective Date Service List ........................................... 38

13.08   Notices ............................................................................. 38

iii

13.09    Immediate Binding Effect ................................................................................... 39

13.10    Severability of Plan Provisions ........................................................................ 39

13.11    Exhibits .............................................................................................................. 39

13.12    U.S Trustee Fees ............................................................................................... 39

13.13    No Admissions ................................................................................................... 39

13.14    Recommendation ............................................................................................... 40

89856667.15

**EXHIBITS**

| Exhibit | Description |
| --- | --- |
| A | Liquidating Trust Agreement |
| B | Liquidation Analysis |

89856667.15

## DISCLAIMER

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED, OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE: (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY; (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY; OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED HEREIN. NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH THE BANKRUPTCY CODE AND BANKRUPTCY RULES, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN APPROVED, DISAPPROVED, OR REVIEWED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION.

89856667.15

## INTRODUCTION

The Debtor[2] proposes this Combined Disclosure Statement and Plan pursuant to §§ 1125 and 1129 of the Bankruptcy Code and Paragraph 12 of the Complex Case Procedures.

The Plan, if Confirmed, will establish the Liquidating Trust, by and through which the Liquidating Trustee will marshal the Assets of the Estate, review and object to the Claims, analyze and litigate Causes of Action, and make Distributions to Holders of Allowed Claims, all as set forth in more detail below.

---

**ALL HOLDERS OF CLAIMS OR INTERESTS AGAINST THE DEBTOR ARE ENCOURAGED TO READ THIS COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

---

## ARTICLE I:
## DEFINITIONS AND CONSTRUCTION OF TERMS

As used in this Combined Disclosure Statement and Plan, the following terms have the following meanings:

**1.01** "**503(b)(9) Claims**" shall mean all Claims arising under § 503(b)(9) of the Bankruptcy Code against the Debtor that: (i) was Filed against the Debtor on or before the General Bar Date or that was listed by the Debtor in its Schedules as liquidated in amount and not "disputed" or "Contingent"; and (ii) are not Settled Claims.

**1.02** "**Administrative Claim**" shall mean any right to payment constituting a cost or expense of administration of the Chapter 11 Case as it relates to the Debtor under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including, any actual and necessary costs and expenses of preserving the Debtor's Estate, any actual and necessary costs and expenses of operating the Debtor's business after the Petition Date, any indebtedness or obligations incurred by the Debtor after the Petition Date in connection with the conduct of its businesses, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under §§ 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtor's Estate under § 1930 of chapter 123 of title 28 of the United States Code, all post-Petition Date taxes, and all other claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court.

**1.03** "**Allowed Claim**" shall mean all or a portion of a Claim, other than a Settled Claim, against the Debtor or an Interest in the Debtor: (a) that has been listed by the Debtor in its Schedules as liquidated in amount and not "disputed" or "Contingent," and with respect to which no Claim or proof of Interest has been Filed; (b) as to which no Objection or request for estimation has been Filed on or before the applicable Claim Objection deadline; (c) as to which any Objection has been settled, waived, withdrawn, or denied by a Final Order; or (d) that is allowed: (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtor prior to the Effective Date, or

---

[2]Capitalized terms used, but not otherwise defined in the text of this Combined Disclosure Statement and Plan, shall have the meaning ascribed to such terms in Article I hereof.

89856667.15

the Liquidating Trustee after the Effective Date, or (iii) pursuant to the terms of this Combined Disclosure Statement and Plan. For purposes of computing Distributions, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees, or charges on such Claim or Interest from and after the Petition Date, except as provided in § 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Combined Disclosure Statement and Plan.

**1.04** "**Assets**" means all tangible and intangible assets of every kind and nature of the Debtor and its Estate within the meaning of § 541 of the Bankruptcy Code, including, but not limited to, Cash and the Causes of Action.

**1.05** "**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to this Chapter 11 Case.

**1.06** "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the District of Maryland.

**1.07** "**Bankruptcy Rules**" shall mean, when referenced generally: (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under § 2075 of title 28 of the United States Code; (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under § 2072 of title 28 of the United States Code; (iii) the applicable Local Rules; (iv) the Complex Case Procedures; and (v) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be; provided, however, when a specific Bankruptcy Rule is referenced (e.g., Bankruptcy Rule 9019), such reference shall be to such Rule under the Federal Rules of Bankruptcy Procedure.

**1.08** "**Bar Date Order**" shall mean the Bankruptcy Court's *Order (I) Establishing Bar Dates for Filing Proofs of Claim, Including Section 503(b)(9) Claims; and (II) Approving Form and Manner of Notice Thereof* [Docket No. 235].

**1.09** "**Business Day**" shall mean any day, other than a Saturday, Sunday, or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.10** "**Cash**" or "**$**" shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

**1.11** "**Causes of Action**" shall mean all claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise against any Person or Entity, including current and former Equity Holders and Insiders of the Debtor and their affiliates to the extent not otherwise addressed in this Plan. Causes of Action also include, but are not limited to: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests;

89856667.15

(c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer or avoidable transfer claim; and (f) any claims or Causes of Action referenced in Section 2.02(j) of this Combined Disclosure Statement and Plan.

**1.12** "**Chapter 11 Case**" shall mean the Debtor's chapter 11 case, which is administered under Case No. 23-12237 (DER) in the Bankruptcy Court.

**1.13** "**Claim**" or "**Claims**" shall mean a claim or claims against the Debtor, as such term is defined in § 101(5) of the Bankruptcy Code.

**1.14** "**Claims Agent**" shall mean Stretto, Inc. or any successor engaged by the Liquidating Trust.

**1.15** "**Class**" shall mean each category or group of Holders of Claims or Interests that has been designated as a class in this Plan.

**1.16** "**Combined Disclosure Statement and Plan**" shall mean this entire document and all exhibits, schedules, and related documents, whether annexed hereto or Filed in connection herewith, including the disclosure statement portions and the plan portions, including as modified by the Confirmation Order (as applicable).

**1.17** "**Complex Case Procedures**" shall mean the Bankruptcy Court's Administrative Order No. 21-03 establishing the *Amended Complex Chapter 11 Case Procedures*.

**1.18** "**Confirmation Date**" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.19** "**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.20** "**Confirmation Order**" shall mean the order of the Bankruptcy Court approving the Disclosure Statement and confirming the Plan.

**1.21** "**Contingent**" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.22** "**Creditor**" shall have the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

**1.23** "**Creditors' Committee**" shall mean the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Case.

**1.24** "**Debtor**" shall mean ESCO, Ltd., including in its capacity prior to the Petition Date, as a debtor-in-possession in the Chapter 11 Case.

4

**1.25** "**Disallowed**" shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (i) has been disallowed, waived, or released, in whole or part, by a Final Order; (ii) has been withdrawn, waived, or released by agreement of the Holder thereof and the Debtor or the Liquidating Trustee, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as disputed, contingent, and/or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) is evidenced by a proof of Claim or a proof of Interest which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; or (vii) where the Holder of a Claim is a Person or Entity from which property is recoverable under §§ 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under §§ 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim or a Disallowed Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

**1.26** "**Disallowed Claim**" shall mean a Claim, or any portion thereof, that is Disallowed.

**1.27** "**Disallowed Interest**" shall mean an Interest, or any portion thereof, that is Disallowed.

**1.28** "**Disbursing Agent**" shall mean the Liquidating Trustee or any third party designated by the Liquidating Trust, in its discretion, to make Disbursements.

**1.29** "**Disclosure Statement**" shall mean the disclosure statement, as amended, supplemented, or modified from time to time, that is embodied within this Combined Disclosure Statement and Plan.

**1.30** "**Disputed**" shall mean any Claim or Interest which has not yet been Allowed or Disallowed.

**1.31** "**Distribution**" shall mean any distribution made pursuant to the Plan by the Liquidating Trustee or the Disbursing Agent to the Holder of Allowed Claims.

**1.32** "**Distribution Record Date**" shall mean the Effective Date of the Plan.

**1.33** "**Effective Date**" shall mean the first Business Day upon which the conditions stated in Section 10.02 of the Combined Disclosure Statement and Plan are satisfied or waived.

**1.34** "**Entity**" shall have the meaning ascribed to such term in § 101(15) of the Bankruptcy Code.

**1.35** "**ESCO**" shall mean ESCO, Ltd., including in its capacities prior to the Petition Date, as a debtor-in-possession in the Chapter 11 Case.

**1.36** "**Estate**" shall mean the estate of the Debtor created pursuant to § 541 of the Bankruptcy Code.

**1.37** "**Exculpated Parties**" shall mean as of the Petition Date through the date of the closing of the Chapter 11 Case (and in the event that the Chapter 11 Case is closed and subsequently reopened, during such time as the Chapter 11 Case is reopened): (i) the Debtor; (ii) the Committee and members of the Committee in their capacity as members of the Committee; (iii) the CRO; (iv) the Liquidating Trust and Liquidating Trustee, and (v) in the case of (i) – (iv), each of their respective Representatives; provided, however, that officers, directors, Equity Holders, and Insiders of the Debtor, and any Affiliate of the foregoing, in each case, whether current or former, are not Representatives for purposes of the provisions of Article IX hereof.

**1.38** "**Executory Contract**" shall mean a contract or unexpired lease to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

**1.39** "**File**," "**Filed**," or "**Filing**" shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case; provided, however, that with respect to proofs of Claim and proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by the Bar Date Order or as otherwise established by order of the Bankruptcy Court.

**1.40** "**Final Administrative Claim Bar Date**" means the date that is fourteen (14) days after the Effective Date, which shall be the deadline for Filing requests for payment of Administrative Claims that arose after the Petition Date, other than Professional Fee Claims.

**1.41** "**Final Order**" shall mean an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor or the Liquidating Trust acting by and through the Liquidating Trustee on behalf of the Estate (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under rule 59 or rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**1.42** "**First Day Declaration**" shall mean the *Declaration of Stanley W. Mastil, Chief Restructuring Officer, In Support of Debtor's Chapter 11 Petition and First Day Motions* [Docket No. 35].

6

**1.43** "**General Bar Date**" shall mean June 30, 2023 for certain Claims arising before the Petition Date, including, but not limited to, 503(b)(9) Claims, General Unsecured Claims, or Priority Non-Tax Claims, except as otherwise provided by the Bar Date Order.

**1.44** "**General Unsecured Claim**" shall mean any unsecured Claim against the Debtor that arose or is deemed to have arisen prior to the Petition Date that is not: (i) an Administrative Claim; (ii) a Priority Tax Claim; (iii) a Priority Non-Tax Claim or (iv) a Settled Claim.

**1.45** "**Governmental Unit**" shall have the meaning ascribed to such term in § 101(27) of the Bankruptcy Code.

**1.46** "**Governmental Unit Bar Date**" shall mean September 27, 2023, as established by the Bar Date Order.

**1.47** "**Holder**" or "**Holders**" shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

**1.48** "**Impaired**" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**1.49** "**Impaired Class**" shall mean a Class of Claims or Interests that is Impaired.

**1.50** "**Insider**" shall have the meaning ascribed to such term in § 101(31) of the Bankruptcy Code.

**1.51** "**Interests**" shall mean the equity or ownership interests of any Person in the Debtor.

**1.52** "**IRS**" shall mean the Internal Revenue Service and its predecessors, successors, and assigns.

**1.53** "**Liquidating Trust**" shall mean the trust established under this Plan and the Liquidating Trust Agreement.

**1.54** "**Liquidating Trustee**" shall mean the Person appointed pursuant this Plan and the Liquidating Trust Agreement to serve as the trustee of the Liquidating Trust for the purposes of, among other things, liquidating the Estate's remaining assets and pursuing Causes of Action. The initial Liquidating Trustee shall be identified in the Plan Supplement.

**1.55** "**Liquidating Trust Assets**" shall mean all Assets of the Debtor on the Effective Date.

**1.56** "**Liquidating Trust Agreement**" shall mean the trust agreement that establishes the Liquidating Trust and governs the powers, duties, and responsibilities of the Liquidating Trustee, which shall be in substantially the same form as attached hereto as **Exhibit A**.

**1.57** "**Liquidating Trust Beneficiaries**" shall mean Holders of Allowed General Unsecured Claims.

89856667.15

**1.58** "**Liquidating Trust Expenses**" shall mean the reasonable fees, costs, and expenses of the Liquidating Trust. For the avoidance of doubt, U.S. Trustee Fees shall be considered a Liquidating Trust Expense to the extent a liquidating trust is required to pay U.S. Trustee Fees. The Liquidating Trust, acting by and through the Liquidating Trustee in his, her or its discretion, shall be authorized to pay the Liquidating Trust Expenses, including professional fees, other than those constituting a Professional Fee Claim, without further Order or notice to any party, except as otherwise set forth in the Combined Disclosure Statement and Plan. Liquidating Trust Expenses shall also include compensation to the Liquidating Trustee, as set forth in the Liquidating Trust Agreement.

**1.59** "**Liquidating Trust Interests**" shall mean the non-transferable beneficial interests in the Liquidating Trust that will entitle the holder thereof to the distributions of Liquidating Trust Assets in accordance with the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement, which shall be non-transferable and non-assignable except by operation of law.

**1.60** "**Liquidating Trust Indemnified Parties**" means the Liquidating Trustee and the Liquidating Trust and Liquidating Trustee's consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, independent contractors and other Representatives, each in their respective capacity as such, and any of such Entity's successors and assigns.

**1.61** "**Local Rules**" shall mean the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland.

**1.62** "**Objection(s)**" shall mean any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim or Interest (including, but not limited to, the resolution of any request for payment of any Administrative Claim).

**1.63** "**Person**" shall have the meaning ascribed to such term in § 101(41) of the Bankruptcy Code.

**1.64** "**Petition Date**" shall mean March 31, 2023, the date on which the Debtor commenced the Chapter 11 Case in the Bankruptcy Court.

**1.65** "**Plan**" shall mean this plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time, including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules, as a subset of the Combined Disclosure Statement and Plan.

**1.66** "**Priority Non-Tax Claim**" shall mean any and all Claims accorded priority in right of payment under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

**1.67** "**Priority Tax Claim**" shall mean a Claim or a portion of a Claim for which priority is asserted under § 507(a)(8) of the Bankruptcy Code.

**1.68** "**Pro Rata**" shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed

89856667.15

Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Combined Disclosure Statement and Plan, as applicable.

**1.69** "**Professional**" shall mean any professional employed in this Chapter 11 Case pursuant to Bankruptcy Code §§ 327, 328, or 1103, or for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to § 503(b)(4) of the Bankruptcy Code.

**1.70** "**Professional Fee Bar Date**" shall mean the deadline for Filing all final applications for Professional Fee Claims, which deadline shall be thirty (30) days after the Effective Date.

**1.71** "**Professional Fee Claims**" shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

**1.72** "**Rejection Claim**" shall mean any Claim for amounts due as a result of the rejection by the Debtor of any Executory Contract under § 365 of the Bankruptcy Code.

**1.73** "**Rejection Damages Bar Date**" shall mean the deadline by which a counterparty to an Executory Contract rejected under this Plan must File a proof of Claim for damages arising from such rejection, and shall be, except as otherwise set forth in a separate Order of the Bankruptcy Court authorizing the rejection of an Executory Contract and setting a different date for any Entity to assert a claim arising from such rejection, the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable; and (ii) thirty (30) days after the effective date of the rejection of such executory contract or unexpired lease, including as to those Executory Contracts that are rejected effective upon entry of the Confirmation Order in accordance with Article VII.

**1.74** "**Representatives**" shall mean with respect to an Entity, all of that Entity's current and former managed and controlled affiliates, subsidiaries, officers, directors, managing members, principals, shareholders, members, partners, employees, agents, attorneys, professionals, accountants, investment bankers, financial consultants, and other representatives, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

**1.75** "**Schedules**" shall mean the schedule of Assets and Liabilities, schedule of Executory Contracts, and Statement of Financial Affairs Filed by the Debtor pursuant to § 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time, which were filed in the Chapter 11 Case at Docket No. 148.

**1.76** "**Settled Claim**" shall mean any Claim that has been settled for an amount of $0.00, waived, and/or released pursuant to a Final Order of the Bankruptcy Court prior to the Effective Date, including through a stipulation approved by the Bankruptcy Court or Final Order approving a settlement under Bankruptcy Rule 9019.

**1.77** "**Solicitation Procedures Order**" shall mean the Bankruptcy Court's Order establishing the procedures for solicitation of and voting on this Plan.

9

89856667.15

**1.78**    "**Tax**" or "**Taxes**" shall mean all income, gross receipts, bag, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, and duties, value added taxes, assessments, or charges (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**1.79**    "**Unclaimed Distributions**" shall mean any undeliverable or unclaimed Distributions.

**1.80**    "**Unimpaired**" shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

**1.81**    "**U.S. Trustee**" shall mean the Office of the United States Trustee for the District of Maryland.

**1.82**    "**U.S. Trustee Fees**" shall mean fees payable pursuant to 28 U.S.C. § 1930.

**1.83**    "**Voting Agent**" shall mean Stretto, Inc. or any successor approved or appointed by the Bankruptcy Court.

**1.84**    "**Voting Deadline**" shall mean the date and time established by the Bankruptcy Court by which ballots to accept or reject this Plan must be received by the Voting Agent in order to be counted, as set forth by the Solicitation Procedures Order.

## ARTICLE II:
## BACKGROUND

**2.01**    **General Background**

    **(a)**    **The Debtor's History**

Headquartered in Baltimore, ESCO (the "**Company**") was formed in 1949 as Eileen Shoes. The Company rebranded its stores as Shoe City in 1980. As of the Petition Date, the Company was an urban-inspired footwear, apparel, and accessories retailer offering men's, women's, and children's products from consumer brands such as Nike, Adidas, and Puma. As of the Petition Date, the Debtor operated 39 stores in Maryland, Virginia, and the District of Columbia.

The Debtor remains a family-owned business to this day as the equity of the Debtor is owned by family members and family trusts of the founders. Unfortunately, after 74 years in business, the Shoe City legacy has come to an end.

    **(b)**    **The Debtor's Prepetition Debt Structure and Related Liens**

The Debtor was party to that certain Loan Agreement dated September 19, 2017 (as amended, supplemented, or otherwise modified from time to time, the "**Pre-Petition Credit Agreement**") with SunTrust Bank (now known as Truist Bank, and hereinafter, the "**Pre-Petition Lender**" in its capacity as lender under the Pre-Petition Credit Agreement). Pursuant to the Loan Agreement, the Pre-Petition Lender agreed to extend the Company a revolving loan in an aggregate principal amount not to exceed $12,000,000 (the "**Pre-Petition Credit Facility**"), amended on December 29, 2020 to an aggregate principal amount not to exceed $10,000,000. The Pre-Petition Credit Facility was secured by first

priority liens over substantially all of the Debtor's assets, including the Debtor's accounts receivable, inventory, and cash collateral, all as set forth in greater detail in the Pre-Petition Credit Agreement and related documents. As of the Petition Date, the unpaid principal balance owed under the Pre-Petition Credit Facility was $2,749,800.11 (the "**Pre-Petition Obligations**").

Shortly after the Petition Date, the Debtor filed the *Debtor's Motion for Entry of Interim and Final Orders (1) Authorizing the Debtor to Obtain Post-Petition Financing on an Interim Basis, Granting Senior Post-Petition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (2) Authorizing the Use of Cash Collateral, (3) Granting Adequate Protection, (4) Modifying the Automatic Stay, and (5) Granting Related Relief* [Docket No. 29] (the "**DIP Motion**"), which sought authority, on an interim and then final basis, to use cash collateral and to obtain postpetition financing (the "**DIP Facility**") from Truist Bank, N.A. (in its capacity as post-petition lender, the "**DIP Lender**"). The Bankruptcy Court granted the DIP Motion on an interim basis on April 5, 2023 [Docket No. 59], on a second interim basis on April 27, 2023 [Docket No. 171], and on a final basis on May 15, 2023 [Docket No. 214] (the "**Final DIP Order**"). Under the terms of the approved DIP Facility, the proceeds of the DIP Facility were used, in part, to "roll-up" the Pre-Petition Obligations. The Pre-Petition Lender and DIP Lender were both paid in full as of May 17, 2023 and released their respective liens on the Debtor's collateral as of that date. *See* Final DIP Order ¶2.

In addition, the Debtor estimates that it has approximately $16 million of outstanding unsecured debt, which is comprised mostly of trade debt due to vendors. For the avoidance of doubt, the unsecured debt was not deemed satisfied pursuant to the Final DIP Order and remains outstanding.

(c)      **Events Leading to the Chapter 11 Case**

Various factors severely impacted the profitability of the Debtor's business, ultimately prompting a liquidity crisis that precipitated the decision to commence this Chapter 11 Case and dispose of all assets pursuant to a Court-regulated process. Over the last several years, the Debtor suffered declines in sales and increasing losses in net income. The Debtor incurred operating losses of approximately $280,000 and $1.76 million in fiscal years 2020 and 2021, respectively, which had a significant negative impact on the Debtor's financial position and liquidity. The Debtor took a number of measures in an attempt to address these issues, including shopping the Company as a going concern as well as seeking third party financing sources for replacement financing.

In May 2022, The Athlete's Foot parent, the Arklyz Group, executed a deal to acquire the Debtor in an effort to expand on Arklyz's North American presence. By all measures, the proposed deal was full of synergies between two companies committed to their respective communities, loyal customers, and philanthropic initiatives. Unfortunately, Arklyz did not close on the deal. As a result, the Debtor was never able to regain profitability.

Starting in fiscal year 2020, certain key vendors to the Debtor's business started to change the allocation of goods provided to the Debtor. The Debtor failed to receive certain high-end goods and new sneaker releases at the levels from previous years that are critical to this industry. In fiscal year 2022, comparable-store sales decreased by approximately $8.5 million from the prior years. During the current fiscal year, sales continued to decrease by almost $5 million through January 2023 when compared to the prior fiscal year, placing increased pressure on the Debtor's liquidity position as none of the Company's efforts to improve its cash position came to fruition.

11

As a result of the poor financial performance, the Debtor was not in compliance with certain covenants under the Pre-Petition Credit Agreement, which constituted events of default under the Pre-Petition Credit Facility and led the Debtor and Pre-Petition Lender to enter into a series of forbearance agreements whereby the Pre-Petition Lender agreed to forbear from exercising any rights and remedies under the Pre-Petition Credit Facility, but also imposed certain restrictions per the terms of the Pre-Petition Credit Agreement that further reduced liquidity.

As a direct result of these liquidity constraints, certain vendors would only ship product to the Debtor on a cash in advance basis, which further stressed the Debtor's liquidity position. Finally, the Debtor's top shoe vendor, terminated its contract with the Debtor in early March 2023. Without new product on the shelves, the Debtor was left with no viable options to save the business. Accordingly, the Debtor, in consultation with the Pre-Petition Lender, agreed that the best path forward was to commence this Chapter 11 Case, conduct store closing sales at all 39 retail locations and liquidate substantially all of its assets for the benefit of all creditor constituencies.

**2.02    The Chapter 11 Case**

**(a)    The Debtor's Bankruptcy Filings and First Day Motions**

On the Petition Date, the Debtor filed certain "first day" motions (the "**First Day Motions**") seeking various relief to facilitate the effective administration of the Chapter 11 Case. In addition to the DIP Motion described in Section 2.01, the First Day Motions requested relief from the Bankruptcy Court to, among other things: (a) expedite the hearing on the First Day Motions [Docket No. 13]; (b) extend the deadline for filing schedules and statements [Docket No. 15]; maintain the Debtor's cash management system [Docket No. 16]; pay pre-petition employee wages [Docket No. 17]; continue its utility services [Docket No. 18]; pay prepetition taxes [Docket No. 19]; pay insurance obligations [Docket No. 20]; appoint the Claims Agent [Docket No. 21]; maintain its customer programs [Docket No. 22]; establish procedures for the store closing sales [Docket No. 24]; and approve a store level employee bonus plan [Docket No. 25]. In support of the First Day Motions, the Debtor relied on the First Day Declaration. The Bankruptcy Court granted these motions on an interim and then final basis (as applicable).

Copies of all pleadings filed in the Chapter 11 Case, including the First Day Motions and related orders, are available free of charge at the Debtor's website maintained by the Claims Agent: https://cases.stretto.com/ShoeCity/court-docket/.

**(b)    The Debtor's CRO, Consultants, and Retained Professionals**

The Bankruptcy Court authorized the Debtor to retain (i) Gavin/Solmonese LLC to provide Stanley W. Mastil as chief restructuring officer [Docket No. 166], and (ii) Polsinelli PC as counsel [Docket No. 167].

In addition, the Bankruptcy Court authorized the Debtor to assume on an interim and then final basis (a) the Store Closing Consulting Agreement dated as of March 16, 2023 by and between the Debtor and Gordon Brothers Retail Partners, LLC (the "**Store Closing Consultant**"); and (b) the Real Estate Consulting and Advisory Services Agreement dated as of March 30, 2023 by and between the Debtor and Gordon Brothers Realty Services, LLC (the "**Lease Consultant**"). *See* Docket Nos. 72, 170.

12

89856667.15

(c)    **Appointment of the Creditors' Committee**

On April 13, 2023, the U.S. Trustee appointed the Creditors' Committee, which, as amended, includes five members: (i) Harvic International, Ltd., (ii) Nike USA, Inc., (iii) Puma North America, (iv) Mondawmin LLC & RPI Chesterfield and (v) PREIT Services, LLC. The Creditors' Committee selected Kelley Drye & Warren LLP and Cole Schotz P.C. as its counsel, and Berkeley Research Group, LLC as its financial advisor.

(d)    **Store Closing and FF&E Sales**

Shortly after the Petition Date, the Debtor, with the assistance of the Store Closing Consultant, commenced "going out of business," "store closing," "everything must go," and similarly themed sales of the Debtor's assets and inventory at all 39 retail locations pursuant to the Bankruptcy Court's interim, and then final approval of its proposed store closing procedures. *See* Docket Nos. 72, 170. As a result of these sales, the Debtor increased the value of its Estate by approximately $11,500,000.00.[3]

(e)    **The Debtor's Unsuccessful Asset Sale Process**

On April 27, 2023, the Bankruptcy Court approved the Debtor's proposed bidding and auction procedures in connection with the sale of (i) certain of its intangible assets [Docket No. 168] and (ii) substantially all of its unexpired leases [Docket No. 169]. With the assistance of the Lease Consultant, the Debtor conducted a robust post-petition marketing process to identify potential purchasers of the Debtor's unexpired leases. Nevertheless, despite its best efforts, the Debtor received no qualified bids for any of its leases or intangible assets, and no auction was conducted.

(f)    **The Debtor's Motion to Reject Certain Executory Contracts and Unexpired Leases**

On April 4, 2023, the Bankruptcy Court entered the *Order Establishing Procedures for the Rejection of Executory Contracts and Unexpired Leases* [Docket No. 23] (the "**Rejection Procedures Order**"). Pursuant to the Rejection Procedures Order, the Debtor filed the *Notice of Rejection of Unexpired Lease(s)* on May 26, 2023 [Docket No. 244], pursuant to which it rejected all of its real property leases, except for the warehouse lease. On June 13, the Bankruptcy Court entered an order approving the rejection of such leases effective as of May 31, 2023 [Docket No. 270].

(g)    **The Key Employee Retention Plan**

On April 17, 2023, the Debtor filed the Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Implement the Key Employee Incentive Plan and Key Employee Retention Plan, and (II) Granting Related Relief [Docket No. 125], seeking approval of the Debtor's key employee retention program (the "**KERP**") and incentive plan (the "**KEIP**"). The Debtor originally designated one employee as eligible under the KEIP and forty-three employees as eligible under the KERP; however, following discussions with the United States Trustee, the Debtor eliminated the KEIP and re-designated the employee originally contemplated for the KEIP as a KERP participant (the "**Revised KERP**"). Payments to eligible employees under the Revised KERP ranged from 5% to 20% of each employee's annual salary, with an aggregate payment cap of $174,600. The Bankruptcy Court

---

[3] This value reflects the gross amount of sales and does not account for the associated costs.

approved the Revised KERP on May 16, 2023 [Docket No. 125]. All KERP payments have been fully satisfied.

(h)    **Claims Bar Dates**

On May 25, 2023, the Bankruptcy Court entered the Bar Date Order. Pursuant to the Bar Date Order, all creditors holding or wishing to assert an unsecured or secured, priority, or nonpriority claim (as defined in Bankruptcy Code section 101(5)) against the Debtor or the Debtor's Estate, arising or accruing prior to the Petition Date, including claims for the value of goods sold to any Debtor within twenty (20) days before the Petition Date arising under Bankruptcy Code section 503(b)(9), were required to file a separate, completed, and executed Proof of Claim form on account of each such claim, together with accompanying documentation, by the General Bar Date, which was **June 30, 2023**.

Pursuant to the Bar Date Order, governmental units (as defined by Bankruptcy Code section 101(27)) holding or wishing to assert claims against the Debtor or the Debtor's estate, arising or accruing prior to the Petition Date, are required to file a separate, completed, and executed Proof of Claim form on account of such claim, together with accompanying documentation, by the Governmental Bar Date, which is **September 27, 2023**.

(i)    **Extension of Exclusivity Period**

On August 22, 2023, the Bankruptcy Court entered the *Order Extending the Exclusive Periods for the Filing of a Chapter 11 Plan and Solicitation of Acceptances Thereof* [Docket No. 313], pursuant to which the Bankruptcy Court extended (i) the Debtor's exclusive period to file a chapter 11 plan through and including September 29, 2023 and (ii) the Debtor's exclusive solicitation period through and including November 27, 2023.

(j)    **The Insiders and Creditors' Committee Investigation**

The Debtor has been owned and operated by the Greenberg family for decades. Theodore Greenberg acted as Chief Executive Officer prior to and after the Petition Date. The Debtor's current and former owners are Greg Greenberg, Theodore Greenberg, Beth Greenberg, Israel Freedman Revocable Trust, Greenberg Family 2012 Irrevocable Trust No. 1 DTD 12/26/12, Greenberg Family 2012 Irrevocable Trust No. 2 DTD 12/18/12, Greenberg Family 2012 Irrevocable Trust No. 3 DTD 12/18/12, Greenberg Family Trust No. 4 and Greenberg Family Trust No. 5 and any other Person or Entity that held any equity interest in the Debtor since March 31, 2020 (collectively, the "Equity Holders"). The Greenberg family had virtually universal control over the Debtor, both as an equity owners and as an current and former officers and directors of the Debtor.

The Creditors' Committee has asserted that, based on the limited information it obtained to date, during the three-year period preceding the Petition Date, the Equity Holders received approximately $1.85 million in equity distributions. Between 2020 and the filing of this Chapter 11 Case, the Equity Holders and certain other Insiders also received approximately $7.63 million in payroll payments. The Creditors' Committee believes that, prior to the Petition Date, the Debtor's bank accounts and credit cards may have been used for non-business related personal expenditures by the Equity Holders.

14

On August 4, 2023, the Creditors' Committee filed its *Motion Pursuant to Bankruptcy Rule 2004 for an Order Authorizing Examination of Greg Greenberg and Directing the Production of Documents from the Debtor's Equity Holders* [Docket No. 307] (the "2004 Motion"). The 2004 Motion sought the production of documents and an examination of one of the Equity Holders in connection with the Estate's potential Causes of Action against the Equity Holders and other Insiders, including (i) breach of fiduciary duty; (ii) breach of the duty of loyalty; (iii) aiding and abetting breach of fiduciary duty or breach of the duty of loyalty; (iv) corporate waste; and (v) fraudulent or preferential transfers or other recovery available under Chapter 5 of the Bankruptcy Code or applicable state law. On August 22, 2023, the Bankruptcy Court granted the 2004 Motion.

## ARTICLE III:
## CONFIRMATION PROCEDURES

### 3.01    Confirmation Procedures

Among other things, the Solicitation Procedures Order approved the adequacy of the disclosures in the Combined Disclosure Statement and Plan on an interim basis and set certain deadlines for the solicitation of the Plan, voting on the Plan, filing objections to the Plan and a hearing to consider approval of the Plan.

The Confirmation Hearing has been scheduled for **November 15, 2023 at 10:00 a.m.** (prevailing eastern time) before the Honorable Chief Judge David E. Rice in Courtroom 9-D, 101 W. Lombard St., Baltimore, MD 21201 to consider: (a) final approval of the Plan as providing adequate information pursuant to § 1125 of the Bankruptcy Code; and (b) Confirmation of the Plan pursuant to § 1129 of the Bankruptcy Code. **The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court**.

### 3.02    Procedure for Objections

Any objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to § 1125 of the Bankruptcy Code and/or Confirmation of the Plan must be made in writing and Filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **November 6, 2023, at 4:00 p.m. (prevailing Eastern time)**: (a) counsel to the Debtor: Polsinelli PC, Attn. Christopher Ward (cward@polsinelli.com) and Shanti M. Katona (skatona@polsinelli.com); (b) counsel to the Creditors' Committee: Kelley Drye & Warren LLP, Attn. James S. Carr (jcarr@kelleydrye.com) and Sean T. Wilson (swilson@kelleydrye.com) and Cole Schotz P.C., Attn. Gary H. Leibowitz (gleibowitz@coleschotz.com) and H.C. Jones III, (hjones@coleschotz.com); and (c) the Office of the United States Trustee, Attn. Hugh M. Bernstein (Hugh.M.Bernstein@usdoj.gov).

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

89856667.15

### 3.03     Requirements for Confirmation

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of § 1129 of the Bankruptcy Code. Among other requirements, the Plan: (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (b) must be feasible. The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

### 3.04     Classification of Claims and Interests

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with § 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to § 1123(a)(1) of the Bankruptcy Code need not be and have not been classified). Under § 1122 of the Bankruptcy Code, the Plan also must classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Debtor believes that the Plan complies with such standard.

> **EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

### 3.05     Impaired Claims or Equity Interests

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in § 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan.

Under the Plan, only Holders of Claims in Class 2 are Impaired and entitled to vote on the Plan. Under the Plan, Holders of Claims in Class 1 are Unimpaired and, therefore, not entitled to vote on the Plan. Finally, under the Plan, Holders of Interests in Class 3 are deemed to reject the Plan under § 1126(g) of the Bankruptcy Code.

89856667.15

**3.06    Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan).

Inasmuch as the Assets (other than Causes of Action) have been liquidated in the Chapter 11 Case and the Plan provides for the Distribution of all of the remaining Cash to Holders of Allowed Claims in accordance with the Plan, for purposes of this test, the Debtor has analyzed the ability of the Liquidating Trust to meet its obligations under the Plan. Based on the Debtor's Liquidation Analysis, the Liquidating Trust will have sufficient assets to accomplish its tasks under the Plan. Specifically, the Debtor projects that the Liquidating Trust will have sufficient Cash to pay Allowed Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims, with remaining Cash allocated to fund, Pro Rata, Allowed General Unsecured Claims in Class 2. Therefore, the Debtor believes that the liquidation pursuant to the Plan meets the feasibility requirements of the Bankruptcy Code.

**3.07    Best Interests Test and Liquidation Analysis**

Even if a plan is accepted by each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in § 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

The Debtor's liquidation analysis is attached hereto as **Exhibit B**. Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. However, the Debtor believes that in a chapter 7 liquidation, there would be additional costs and expenses that the Estate would incur as a result of liquidating the Estate in chapter 7, to the detriment of most General Unsecured Claim Holders. Accordingly, the Debtor believes that Holders of Allowed General Unsecured Claims would receive less than anticipated under the Plan if the Chapter 11 Case was converted to a chapter 7 case and, therefore, the classification and treatment of Claims and Interests in the Plan complies with § 1129(a)(7) of the Bankruptcy Code.

**3.08    Acceptance of the Plan**

In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one voting class, excluding the votes of Insiders, must actually vote to accept the Plan.

89856667.15

> **IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY AND TO IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE HOLDER.**

## ARTICLE IV:
## CLASSIFICATION OF CLAIMS AND INTERESTS AND EXPECTED RECOVERIES

**4.01    Overview of Classification.**

Pursuant to § 1122 of the Bankruptcy Code, a Claim or Interest is placed in a particular Class for purposes of voting on this Plan and receiving Distributions under the Plan to the extent: (i) the Claim or Interest qualifies within the description of that Class; and (ii) the Claim or Equity Interest has not been paid, released, or otherwise compromised before the Effective Date. In accordance with § 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified under this Plan.

**4.02    Identification and Treatment of Unclassified Claims**

(a)    **Administrative Claims**. Each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtor or the Liquidating Trust, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing as soon as practicable after the latest to occur of: (x) the Effective Date; (y) the date such Claim is Allowed; and (z) such other date that is mutually agreed by the Liquidating Trust and the Holder of such Claim.

(i)    Final Administrative Claim Bar Date. Holders of Administrative Claims accruing from the Petition Date through the Effective Date, other than Professional Fee Claims, shall File with the Claims Agent and serve on the Debtor and the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date. Any such Claim not Filed by the Final Administrative Claim Bar Date shall be deemed waived, and the Holder of such Claim shall be forever barred from receiving payment on account thereof.

(ii)    Bar Date for Applications for Professional Fees. Professional Fee Claims are Administrative Claims and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date. If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.

89856667.15

(iii)   Section 503(b)(9) Claims. For the avoidance of doubt, the deadline for Filing requests for payment of 503(b)(9) Claims was the General Bar Date, and that deadline shall not be extended by the Plan or the Confirmation Order.

(b)   **U.S. Trustee Fees** All fees pursuant to § 1930 of title 28 of the United States Code incurred in connection with any disbursement made by the Debtor on or prior to the Effective Date, including but not limited to, fees payable in connection with the transfers of Liquidating Trust Assets to the Liquidating Trust, shall be paid on or before the Effective Date or in the ordinary course pursuant to applicable law. Notwithstanding anything to the contrary in this Plan, the U.S. Trustee shall not be required to File a proof of Claim for administrative expenses.

(c)   **Priority Tax Claims**. Each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; (b) such other treatment as to which the Debtor or the Liquidating Trust, as applicable, and the Holder of such Allowed Priority Tax Claim, shall have agreed upon in writing, as soon as practicable after the latest to occur of: (x) the Effective Date; (y) the date such Claim is Allowed; and (z) such other date that is mutually agreed by the Liquidating Trust and the Holder of such Claim

(d)   **Disputed Unclassified Claims**. If an unclassified Claim listed under Section 4.02 is Disputed as of the Effective Date, payment on account of such Disputed Claim shall be made in accordance with Section 8.02 of the Plan.

### 4.03   Identification of Classes of Claims

(a)   **Treatment of Priority Non-Tax Claims (Class 1)**. Each Holder of an Allowed Priority Non-Tax Claim against the Debtor shall receive, as soon as practicable on or after the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, either: (A) Cash equal to the full unpaid amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment as the Debtor, the Liquidating Trust, and the Holder of such Allowed Priority Non-Tax Claim shall have agreed. If a Priority Non-Tax Claim is not Allowed as of the Effective Date, such Priority Non-Tax Claim shall be paid as soon as practicable after such Priority Non-Tax Claim becomes an Allowed Claim, either: (A) Cash equal to the full unpaid amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment as the Debtor, the Liquidating Trust, and the Holder of such Allowed Priority Non-Tax Claim shall have agreed. Such Claims are, therefore, Unimpaired and not entitled to vote.

(b)   **Treatment of General Unsecured Claims (Class 2)**. Each Holder of an Allowed General Unsecured Claim shall receive a Liquidating Trust Interest, which shall entitle each Holder thereof to its pro rata share of Liquidating Trust Assets after satisfaction in full of all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Liquidating Trust Expenses.  Claims in Class 2 are Impaired and Holders are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

(c)   **Treatment of Equity Interests (Class 3)**. The Interests in Class 3 are Impaired. Holders of Class 3 Interests shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon the Effective Date of the Plan, and the Holders of Class 3 Interests shall take nothing under the

19

Plan. Claims in Class 3 are Impaired and Holders are not entitled to vote on, and are deemed to reject, the Combined Disclosure Statement and Plan.

### 4.04    Treatment of Classified Classes, Rights to Vote, and Estimated Distributions

The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on numerous contingencies, including the amount of Allowed Claims that exist after the Claims reconciliation and objection process:

| Class/Designation | Plan Treatment | Status | Projected Recovery |
|---|---|---|---|
| Class 1: Allowed Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim against the Debtor shall receive, on the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, either: (A) Cash equal to the full unpaid amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment as the Debtor, the Liquidating Trustee, and the Holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing as soon as practicable after the latest to occur of: (x) the Effective Date; (y) the date such Claim is Allowed; and (z) such other date that is mutually agreed by the Liquidating Trust and the Holder of such Claim. | **Unimpaired** | 100% Recovery |
| Class 2: Allowed General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive a Liquidating Trust Interest, which shall entitle each Holder thereof to its pro rata share of Liquidating Trust Assets after satisfaction in full of all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Liquidating Trust Expenses. Claims in Class 2 are Impaired and Holders are entitled to vote to accept or reject the Combined Disclosure Statement and Plan. | **Impaired; Entitled to Vote** | <1% Pro Rata Recovery[4] |

---

[4] This estimated distribution does not include any proceeds of Causes of Action that may be recovered by the Liquidating Trustee for the benefit of Holders of Class 2 Allowed Claims. The Debtor has not conducted any diligence with respect to potential Causes of Action and does not take a position on if there will be any proceeds of such potential Causes of Action.

20

| Class/Designation | Plan Treatment | Status | Projected Recovery |
|---|---|---|---|
| Class 3: Equity Interests | The Interests in Class 3 are Impaired. Holders of Class 3 Interests shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon the Effective Date of the Plan, and the Holders of Class 3 Interests shall take nothing under the Plan. Claims in Class 3 are Impaired and Holders are not entitled to vote on, and are deemed to reject, the Combined Disclosure Statement and Plan. | **Impaired; Deemed to reject Plan and Not entitled to vote** | Recovery: 0% |

### 4.05    Elimination of Classes for Voting Purposes

Any Class of Claims or equity Interests that is not occupied as of the date of the commencement of the Confirmation Hearing shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under § 1129(a)(8) of the Bankruptcy Code.

### 4.06    Insurance

Notwithstanding anything to the contrary herein, unless elected otherwise by the Liquidating Trust, acting by and through the Liquidating Trustee, if any Allowed Claim is covered by an Insurance Policy, such Claim shall first be paid from proceeds of such Insurance Policy to the extent such proceeds are available, with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

### ARTICLE V:
### CERTAIN RISK FACTORS TO BE CONSIDERED
### PRIOR TO VOTING

**THIS PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THIS PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THIS PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THIS PLAN AND ITS IMPLEMENTATION.**

The following constitute a non-exhaustive list of risk factors associated with this Plan and its implementation:

- The Debtor can make no assurances that the requisite acceptances to the Plan will be received, and the Debtor may need to obtain acceptances to an alternative plan of

21

liquidation for the Debtor, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estate under chapter 7 of the Bankruptcy Code.

- There is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.

- Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtor's estimates.

- The Debtor believes that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such classification requirement, the Bankruptcy Court could deny Confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the Confirmation and consummation of the Plan and could increase the risk that the Plan will not be consummated.

- The Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived).

- There can be no assurance that the estimated Claim amounts set forth in the Plan are correct, and the actual Allowed amounts of Claims may differ from the estimates. Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein, thereby materially reducing the recovery to the Holders of General Unsecured Claims under the Plan.

- There can be no assurance that the exculpation provisions, as provided in Article IX of the Plan, will be approved. Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

- There are a number of material income tax considerations, risks and uncertainties associated with the Plan. No opinion of counsel and no rulings or determinations of the IRS or any other tax authority have been sought or obtained with respect to any such tax consequence of the Plan.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

89856667.15

## ARTICLE VI:
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 6.01    Initial Liquidating Trustee

The identity, qualifications, experience, and fee structure of the initial Liquidating Trustee shall be set forth in the Plan Supplement. The Debtor believes that the initial Liquidating Trustee is well qualified to serve as the Liquidating Trustee in an efficient and cost-effective manner.

### 6.02    Dissolution

From and after the Effective Date, the Debtor for all purposes shall be deemed to have dissolved and withdrawn its business operations from any state or country in which it was previously conducting, or is registered or licensed to conduct, its business operations, and shall not be required to File any document, pay any sum or take any other action, in order to effectuate such dissolution and withdrawal, provided, however, the Debtor, with the consent of the Liquidating Trustee, may elect to delay the dissolution of the Debtor beyond the Effective Date, if they determine such delay is in the best interest of the Liquidating Trust and the Liquidating Trust Beneficiaries. In the event that the dissolution of the Debtor is delayed beyond the Effective Date, the Liquidating Trustee shall dissolve such Debtor as soon as reasonably practical.

### 6.03    Release of Liens and Security Instruments

Except as otherwise provided in the Plan, on the Effective Date, all liens against any Assets shall be fully released, and all of the right, title, and interest of any Holder of such liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against any net proceeds of sales of such Assets. For the avoidance of doubt, all mortgages, deeds of trust, liens, pledges, or other security interests against any Assets shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated Schedules or statements typically filed pursuant to the Uniform Commercial Code.

### 6.04    Cancellation of Notes and Instruments

As of the Effective Date, except to the extent otherwise provided in the Plan, all notes, agreements, and securities evidencing Claims and the rights thereunder of the Holders thereof, shall, with respect to the Debtor, be canceled and deemed null and void and of no further force and effect, and the Holders thereof shall have no rights against the Debtor and/or the Estate, and such instruments shall evidence no such rights, except the right to receive the Distributions provided for in this Plan.

### 6.05    Vesting and Sale or Other Disposition of Assets; Representative of the Estate; Liquidating Trust Expenses

On the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred, all right, title, and interest in and to the Liquidating Trust Assets to the Liquidating Trust, which Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims, liens, charges, other encumbrances, or Interests, except for the obligations under this Plan. On and after the Effective Date, the Liquidating Trust, acting by and through the Liquidating Trustee, may use, acquire, and dispose of Assets and compromise or settle any Claims or

23

Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan or the Confirmation Order. The Liquidating Trust, acting by and through the Liquidating Trustee, on and after the Effective Date, may conduct any sales or liquidations of Assets on any terms it deems appropriate, without further order of the Bankruptcy Court, except as otherwise provided in the Plan or the Confirmation Order. The Liquidating Trust, acting by and through the Liquidating Trustee, on and after the Effective Date, shall be authorized to pay the Liquidating Trust Expenses, in the Liquidating Trustee's reasonable discretion, without further Order or notice to any party, except as otherwise set forth in the Combined Disclosure Statement and Plan. For the avoidance of doubt, the Liquidating Trust must reserve for or pay all Liquidating Trust Expenses before any Holder of an Allowed Claim may receive a Distribution.

### 6.06    Purpose of Liquidating Trust

The Liquidating Trust shall be established for the purpose of receiving, maintaining, liquidating and distributing the Liquidating Trust Assets of the Debtor and its Estate, prosecuting any Causes of Action transferred to the Liquidating Trust to maximize recoveries for the benefit of the Liquidating Trust Beneficiaries, reviewing, reconciling, allowing, objecting to and resolving Claims, and making Distributions in accordance with the Combined Disclosure Statement and Plan, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

### 6.07    Preservation of All Causes of Action and Standing

In accordance with § 1123(b) of the Bankruptcy Code, the Liquidating Trust shall be the representative of the Debtor's Estate with respect to all Liquidating Trust Assets, including but not limited to Causes of Action, and the Liquidating Trust, acting by and through the Liquidating Trustee, shall be exclusively vested with, retain, and may enforce and prosecute any and all claims that the Debtor or the Estate may have against any Person or Entity that constitute Causes of Action, including the Causes of Action against the Equity Holders and Insiders described in section 2.02, subject to the provisions of this Plan. The Liquidating Trust, acting by and through the Liquidating Trustee, shall have standing for all purposes, including but not limited to, investigating, pursuing, prosecuting, settling, collecting, litigating, and/or recovering any Liquidating Trust Assets, subject to the provisions of this Plan.  The Liquidating Trust shall be deemed to be a judicial substitute for the Debtor as the party-in-interest in this Chapter 11 Case, under the Plan or in any judicial or administrative proceeding or appeal to which the Debtor is a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.

### 6.08    Effectuating Documents and Further Transactions

On and after the Effective Date, the Debtor's existing management (the "**CRO**") shall continue to act solely to the limited extent necessary to: (i) facilitate the filing of the 2022 tax returns; and (ii) complete any other tasks the CRO reasonably determines are necessary to wind down the Debtor and its Estate which are not the responsibility of the Liquidating Trust or Liquidating Trustee under this Combined Disclosure Statement and Plan. Upon completion of those limited set of tasks, the CRO shall be deemed to have resigned. Immediately on the Effective Date, the Debtor's other remaining

members, directors, managers, and officers, and any remaining employees shall be deemed to have resigned.

On and after the Effective Date, the Liquidating Trust, acting by and through the Liquidating Trustee, shall be authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan and the transactions contemplated thereby, in each case, in the name of and on behalf of the Debtor and the Liquidating Trust, without the need for any approvals, authorization, or consents except those expressly required pursuant to the Plan.

### 6.09    The Liquidating Trust Agreement

The Liquidating Trust Agreement generally will provide for, among other things:  (i) the payment of Liquidating Trust Expenses; (ii) the retention of professionals and advisors to the Liquidating Trust or Liquidating Trustee and the payment of their reasonable compensation, all without Bankruptcy Court approval or further order; (iii) the investment of Cash by the Liquidating Trust within certain limitations; (iv) the sale, liquidation, transfer, assignment, distribution, abandonment or other disposition of Liquidating Trust Assets or any part thereof or any interest therein upon such terms as the Liquidating Trust, acting by and through the Liquidating Trustee, determines to be necessary, appropriate or desirable in its sole discretion; (v) litigation of any Causes of Action, which may include the pursuit, commencement, prosecution, settlement, release, waiver, abandonment, or dismissal of any such Causes of Action; (vi) the pursuit of objections to, and estimations and settlements of, Disputed Claims; (vii) the making of Distributions under this Combined Disclosure Statement and Plan and under the Liquidating Trust Agreement to Holders of Allowed Claims; (viii) the dissolution of the Debtor under applicable state law; (ix) reasonable and customary limitation of liability and indemnification provisions; and (x) the exercise of such other powers as deemed by the Liquidating Trustee to be necessary and proper to implement the provisions of the Combined Disclosure Statement and Plan.

### 6.10    Powers of the Liquidating Trust and Liquidating Trustee

The Liquidating Trust, acting by and through the Liquidating Trustee, shall be deemed to be a judicial substitute for the Debtor as the party-in-interest in the Chapter 11 Case solely with respect to the purposes of the Liquidating Trust, under the Combined Disclosure Statement and Plan or in any judicial proceeding or appeal to which the Debtor is a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, and is appointed as the representative of the Debtor's Estate solely for the purposes set forth herein. Solely with respect to the purposes of the Liquidating Trust set forth herein, the Liquidating Trust, acting by and through the Liquidating Trustee, may exercise all power and authority that may be exercised by any officer, director, or Holder of an Interest in the Debtor with like effect as if authorized, exercised, and taken by unanimous consent of such officers, directors, or Holders of Interests.

### 6.11    Limitation of Liability and Indemnification

(a)    **Limitation of Liability.**  Neither the Liquidating Trust nor the Liquidating Trustee, nor their respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, independent contractors,

89856667.15

disbursing agents or agents, and any of such Entity's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Combined Disclosure Statement and Plan or Liquidating Trust Agreement, other than for specific actions or omissions resulting from its willful misconduct, gross negligence or fraud found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Liquidating Trust.  In no event shall the Liquidating Trust or Liquidating Trustee be liable for indirect, punitive, special, incidental or consequential damage or loss (including lost profits) whatsoever, even if the Liquidating Trust or Liquidating Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. The Liquidating Trust or Liquidating Trustee may, in connection with the performance of their respective duties and functions, in and in their sole and absolute discretion, consult with the Liquidating Trust's attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing. Notwithstanding such authority, the neither the Liquidating Trust nor Liquidating Trustee shall be under any obligation to consult with any such attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the Liquidating Trust or Liquidating Trustee unless such determination is based on willful misconduct, gross negligence, or fraud. Entities dealing with the Liquidating Trust shall look only to Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trust or Liquidating Trustee to such Entity in carrying out the terms of the Combined Disclosure Statement and Plan or the Trust Agreement, and the Liquidating Trustee shall have no personal obligation to satisfy such liability.

(b)   **Indemnification.**  The Liquidating Trust shall indemnify the Liquidating Trust Indemnified Parties for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Liquidating Trust Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Liquidating Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Combined Disclosure Statement and Plan or the Liquidating Trust Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.  In addition, the Trust shall, to the fullest extent permitted by law and otherwise consistent with the Combined Disclosure Statement and Plan, indemnify and hold harmless the Liquidating Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of the Combined Disclosure Statement and Plan if the Liquidating Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidating Trust.  To the extent the Liquidating Trust indemnifies and holds harmless any Liquidating Trust Indemnified Parties as provided herein, the legal fees and related costs incurred by counsel to the Liquidating Trust or Liquidating Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidating Trust Expenses. The costs and expenses incurred in enforcing the right of indemnification in this Section [6.11] shall be paid by the Liquidating Trust as Liquidating Trust Agreement.  This provision shall survive the

26

termination of the Liquidating Trust Agreement and the death, dissolution, incapacity, liquidation, resignation, replacement, or removal of the Liquidating Trustee.

**6.12    United States Federal Income Tax Treatment of the Liquidating Trust**

For all United States federal income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall be treated as: (a) a transfer of the Liquidating Trust Assets directly to the applicable Holders of Allowed General Unsecured Claims, followed by (b) the transfer by the Holders of such Allowed General Unsecured Claims to the Liquidating Trust of such Liquidating Trust Assets in exchange for the Liquidating Trust Interests. Accordingly, the Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

**6.13    Insurance Policies**

(a)    **Insurance Policies Remain In Force.** Up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third-party administrators under such Insurance Policies shall continue following the Effective Date (including any obligations to pay, defend and process insured claims).

(b)    **D&O Insurance Policies; Employment Practice Liability Policies; Similar Policies.** Nothing contained in this Plan shall affect or impair the rights of any non-Debtor insured persons covered under any D&O Insurance Policy, employment practices or similar liability Insurance Policies (including, without limitation, policies for the benefit of the Debtor's directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

(c)    On behalf of the Liquidating Trust, the Liquidating Trustee shall be authorized, but not required, to obtain insurance coverage for itself and its Representatives, as a Liquidating Trust Expense.

**6.14    Dissolution of Creditors' Committee**

On the Effective Date, the Creditors' Committee shall continue in existence and have standing and capacity solely to prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the Creditors' Committee or its respective Professionals. Following the completion of the foregoing, the Creditors' Committee shall be dissolved, and the members of the Creditors' Committee shall be released and discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, the Chapter 11 Case.

**6.15    Transfer of Privilege/No Waiver**

On the Effective Date, all of the Debtor's evidentiary privileges, including the attorney-client privilege and work-product doctrine, shall be deemed transferred to the Liquidating Trust. Nothing herein shall be deemed a waiver of the Debtor's or the Estate's rights of privilege.

### 6.16    Termination of the Claims Agent

At any time following the Effective Date, the Liquidating Trustee shall be authorized to terminate the services of the Claims Agent by providing thirty (30) days written notice without need for order of the Bankruptcy Court or any other party. Following termination, the Claims Agent shall provide the Liquidating Trustee and the Bankruptcy Court with a copy of the claims register and a copy of all filed proofs of Claim. The Bankruptcy Court will retain jurisdiction to hear any dispute in the event that the Liquidating Trustee and Claims Agent cannot agree upon the amount of fees and expenses sought by the Claims Agent.

### 6.17    Records

Upon the Effective Date, the Liquidating Trust shall be provided with originals or copies of all documents and business records of the Debtor necessary for the disposition of Liquidating Trust Assets and the reconciliation of Claims.  Any attorney, accountant, or other person that holds the Debtor's recorded information, including books, documents, records, and papers, relating to the Debtor's property or financial affairs, shall turn over or disclose such recorded information to the Liquidating Trust upon written notice by the Liquidating Trust.  From and after the Effective Date, the Liquidating Trust shall maintain the Debtor's documents and records in the ordinary course of business and according to practices and terms that it deems reasonable and appropriate.  Any books and records of the Debtor transferred to the Liquidating Trust may be abandoned, destroyed, or disposed of by the Liquidating Trustee on behalf of the Liquidating Trust, with or without Bankruptcy Court approval, at such time as the Liquidating Trustee determines, in his, her, or its sole discretion, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Liquidating Trust or the Liquidating Trust Beneficiaries.

### 6.18    Final Decree

Notwithstanding anything in the Bankruptcy Code, Bankruptcy Rules, or Local Rules to the contrary, at any time following the Effective Date, the Liquidating Trust, acting by and through the Liquidating Trustee, shall be authorized to file a motion for entry of a final decree closing the Chapter 11 Case.

**ARTICLE VII:**
**EXECUTORY CONTRACTS**

### 7.01    Rejection of Executory Contracts and Unexpired Leases

Except for any Executory Contracts of the Debtor: (i) that previously were assumed or rejected by an Order of the Bankruptcy Court pursuant to § 365 of the Bankruptcy Code; or (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to, and remains pending as of, the Confirmation Date, every Executory Contract and Unexpired Lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected in accordance with § 365 of the Bankruptcy Code effective immediately as of entry of the Confirmation Order. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to § 365 of the Bankruptcy Code.

**7.02    Bar Date for Rejection Damages Claims**

If the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor and the Estate unless a proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date. Allowed Rejection Claims shall be classified as General Unsecured Claims in Class 2 of the Plan.

**7.03    Pre-Existing Obligations to the Debtor Under Executory Contracts**

Rejection of any Executory Contract pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such Executory Contracts. Notwithstanding any applicable non-bankruptcy law to the contrary, the Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnifications or continued maintenance obligations on goods or services previously purchased by the Debtor from counterparties to rejected Executory Contracts.

**ARTICLE VIII:**
**PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND DISTRIBUTIONS**
**OF ASSETS UNDER THE PLAN**

**8.01    Claim Objections**

(a)    **Right to Object to Claims.**

Notwithstanding any requirements that may be imposed pursuant to the Bankruptcy Code or Bankruptcy Rules, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Liquidating Trust, acting by and through the Liquidating Trustee, shall have the authority, but not the obligation, to do any of the following with respect to any Claims or Interests: (i) file, withdraw, or litigate to judgment Objections to and requests for estimation of Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court or any other party; and (iii) administer and adjust, or cause the Claims Agent to administer and adjust, the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court or any other party. The Liquidating Trust shall succeed to any pending objections to Claims filed by the Debtor prior to the Effective Date and shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim.

**8.02    Distribution Provisions**

(a)    **Distributions to be Made and Adequate Reserves.** The Liquidating Trust and/or the Disbursing Agent shall be responsible for making Distributions under the Plan. The Liquidating Trust shall also establish and maintain a reserve of Cash to satisfy anticipated Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Professional Fee Claims, as well as anticipated Liquidating Trust Expenses.

(b)    **No Liability.** The Liquidating Trust shall only be required to act and make distributions in accordance with the terms of the Plan, the Trust Agreement, and related documents.

The Liquidating Trust shall have no obligation or liability for Distributions under the Plan to any party who does not hold a Claim against the Debtor as of the Effective Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of the Plan, the Trust Agreement, and related documents.

(c)    **Distributions on Account of Disputed Claims.** Except as otherwise provided in the Plan, a Final Order, or as agreed between the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidating Trust at such periodic intervals as the Liquidating Trust, acting by and through the Liquidating Trustee, determines to be reasonably prudent in its discretion.

(d)    **No Distributions Pending Disputes.** Except as otherwise provided in the Plan: (i) no distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable); and (ii) unless agreed otherwise by the Liquidating Trust, no Distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim, or any Person that is or may be the subject of a Cause of Action, until such Person's Disputed Claim and the Cause of Action (as applicable) have been resolved by agreement with the Liquidating Trust or a Final Order. Upon a Disputed Claim becoming an Allowed Claim, such Allowed Claim shall be entitled to Distributions in accordance with its treatment under this Plan.

(e)    **Unclaimed Distributions.** Any Entity that fails to claim any Cash within sixty (60) days from the date upon which a Distribution is first made to such Entity shall forfeit all rights to any Distribution under the Plan, notwithstanding any federal, state, local, or provincial escheat, unclaimed property or abandoned property law to the contrary, and the Liquidating Trustee shall be authorized to cancel any Distribution that is not timely claimed. Upon forfeiture, (i) such forfeited Distribution shall revert to the Liquidating Trust for all purposes, and (ii) the Claim of any Creditor or Interest Holder with respect to such funds shall be irrevocably waived and forever barred against the Debtor, the Estate, and the Liquidating Trust.

(f)    **Delivery of Distributions and Undeliverable Distributions to Holders of Claims.** Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date, as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no proof of Claim is Filed); (b) at the addresses set forth in any written notices of address changes delivered to the Debtor or the Liquidating Trust, as applicable, after the date of any related proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no proof of Claim has been Filed and the Debtor or the Liquidating Trust, as applicable, has not received a written notice of a change of address prior to the Effective Date.

(g)    **Undeliverable Distributions.** The Liquidating Trust, acting by and through the Liquidating Trustee, in his or her sole discretion may, but shall have no obligation to, attempt to locate Holders of undeliverable Distributions. Any Distributions returned to the Liquidating Trust as undeliverable or the like shall remain in the possession of the Liquidating Trust, until such time as a Distribution becomes deliverable or the 60-day period specified in Section 8.02(e) hereof passes, and no further Distributions shall be made to such Holder unless such Holder notifies the Liquidating Trustee of its then-current address.

(h)    **De Minimis Distributions.** If any individual Distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidating Trust may cancel such Distribution.

## ARTICLE IX:
## RELEASES, INJUNCTION, AND RELATED PROVISIONS

**9.01    Reserved**

**9.02    Reserved**

**9.03    Reserved**

**9.04    Exculpation and Limitation of Liability**

(a)    **The Exculpated Parties shall neither have nor incur any liability to any Entity for any claims or causes of action arising on or after the Petition Date and prior to closing of the Chapter 11 Case (and in the event that the Chapter 11 Case is closed and subsequently reopened, during such time as the Chapter 11 Case is reopened), for any act taken or omitted to be taken in connection with, or related to: (i) the Chapter 11 Case; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; (iii) any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; or (iv) the approval of the Disclosure Statement or Confirmation or consummation of the Plan; _provided_, _however_, that the foregoing provisions shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted fraud, gross negligence or willful misconduct; _provided_, _further_, _however_, that the Exculpated Parties shall each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.**

(b)    **The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.**

**9.05    Injunctions**

(a)    **FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.**

31

89856667.15

(b)      **FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE EXCULPATION GRANTED IN SECTION 9.04, ALL ENTITIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED UNDER THIS PLAN.**

(c)      **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN OR THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF SECTION 9.04, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY EXCULPATED PARTY ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.**

(d)      **THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY OR ESTATE. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED, AND ALL SUCH CLAIMS AND INTERESTS SHALL BE DEEMED SURRENDERED AND EXTINGUISHED.**

(e)      **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED, AND ALL INTERESTS SHALL BE DEEMED SURRENDERED OR EXTINGUISHED, AS THE CASE MAY BE, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY**

32

**LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(g) OF THE BANKRUPTCY CODE.**

(f)    ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

## ARTICLE X:
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

**10.01    Conditions Precedent to Confirmation**

It shall be a condition to Confirmation hereof that the following provisions, terms, and conditions shall have been satisfied, unless otherwise waived pursuant to Section 10.03:

(a)    The Bankruptcy Court shall have entered an order, in form and substance acceptable to the Debtor and the Creditors' Committee, approving the Disclosure Statement as containing adequate information within the meaning of § 1125 of the Bankruptcy Code; and

(b)    The Bankruptcy Court shall have entered an order confirming the Plan, and the Plan, the Confirmation Order, and any documents filed in relation to or to supplement the Plan shall be in a form and substance acceptable to the Debtor and the Creditors' Committee.

**10.02    Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following provisions, terms, and conditions shall have been satisfied, unless waived pursuant to Section 10.03:

(a)    The Bankruptcy Court shall have entered the Confirmation Order;

(b)    No order of a court shall have been entered and remain in effect restraining the Debtor from consummating the Plan and the transactions contemplated therein, and the Confirmation Order shall be a Final Order and shall be in full force and effect; and

(c)    The Liquidating Trustee shall have been appointed and the Liquidating Trust Agreement shall have been fully executed and become effective.

**10.03    Waiver of Conditions**

The conditions to Confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article X may be waived at any time by the Debtor in its discretion with the consent of the Creditors' Committee.

### 10.04  Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtor; (ii) prejudice in any manner the rights of the Debtor, any Holders of a Claim or Interest or any other entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, the Creditors' Committee, any Creditors or Interest Holders, or any other Entity in any respect.

### 10.05  Filing of Notice of the Effective Date.

On the Effective Date, or as shortly thereafter as reasonably practicable, the Debtor shall file a notice of the Effective Date with the Bankruptcy Court. The Debtor shall not be required to serve the notice of Effective Date on any party other than those parties that receive notice via the Bankruptcy Court's CM/ECF filing system or that have requested notice under Bankruptcy Rule 2002.

## ARTICLE XI:
## MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN

### 11.01  Modification and Amendments

Except as otherwise specifically provided herein, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan. In addition, prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

### 11.02  Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to § 1127(a) of the Bankruptcy Code and do not require additional disclosure or re- solicitation under Bankruptcy Rule 3019.

### 11.03  Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan before the Effective Date, without prejudice to the Debtor's ability or right to file another plan in the future.

## ARTICLE XII:
## JURISDICTION

### 12.01  Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)     To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b)     To ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)     To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(d)     To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any entity's obligations in connection with the Plan, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)     To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor, the Estate, or the Liquidating Trustee;

(g)     To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor, or the Estate that may be pending on the Effective Date or that may be brought by the Liquidating Trust or Liquidating Trustee, or any other related proceedings by the Liquidating Trust or Liquidating Trustee, and to enter and enforce any default judgment on any of the foregoing;

(h)     To decide or resolve any and all applications for Professional Fee Claims;

(i)     To issue orders in aid of execution and implementation of the Plan to the extent authorized by § 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)     To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of the Plan;

(k)     To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Case;

(l)     To hear and determine all Causes of Action, including, without limitation, (i) all Causes of Action against the current and former Equity Holders and Insiders of the Debtor and their affiliates; and (ii) actions under Chapter 5 of the Bankruptcy Code;

(m)     To enter an order closing the Chapter 11 Case when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

## 12.02   Limitation on Jurisdiction

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan. For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

      (a)    Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in accordance with 28 U.S.C. § 157(c) and any and all related proceedings, including, without limitation, all proceedings concerning disputes with, or Causes of Action or Claims against, any Person that the Debtor, the Estate, the Liquidating Trust or any of their successors or assigns, may have;

      (b)    Include jurisdiction over the recovery of any Estate property or Liquidating Trust Assets (or property transferred by the Debtor with Bankruptcy Court approval) from any Person wrongly asserting ownership, possession or control of the same, whether pursuant to §§ 542, 543, 549, and/or 550 of the Bankruptcy Code or otherwise; and

      (c)    Permit the taking of any default judgment against any Person who has submitted himself, herself or itself to the jurisdiction of the Bankruptcy Court.

## ARTICLE XIII:
## MISCELLANEOUS

### 13.01   Exemption from Taxes

To the extent the Plan and the Confirmation Order provide for: (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; and (b) the creation, execution, and delivery of agreements or other documents creating or evidencing the formation of the Liquidating Trust and any right or interest in the Liquidating Trust, pursuant to § 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein shall not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 13.02   Compliance with Tax Requirements

In connection with the consummation of this Combined Disclosure Statement and Plan, the Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  Notwithstanding anything to the contrary in this Plan, the Liquidating Trust shall be entitled to deduct any federal, state, or local withholding taxes from any distributions made with respect to Allowed Claims, as appropriate. The Liquidating Trust shall be authorized to take all actions necessary to comply with applicable withholding and reporting requirements, including, without limitation, applying a portion of any distribution of Cash to be made under the Plan to pay applicable withholding Taxes. Any amounts withheld pursuant to the immediately preceding sentence shall be deemed to have been distributed and received by the applicable recipient for all purposes of the Plan.

Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution. The Liquidating Trust shall have the right, but not the obligation, to not make a Distribution until the applicable recipient has made arrangements satisfactory to the Liquidating Trustee for the payment of any Tax obligations. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date, and the remaining portion of such Distributions, if any, will apply to any interest on such Claim after the Petition Date.

All Holders of Claims entitled to Distributions of under the Combined Disclosure Statement and Plan, as a condition to receiving any Distribution, shall provide the Liquidating Trust with a completed and executed IRS Form W-8 or Form W-9, or similar form within 60 days of first written request by the Liquidating Trust.  If a Holder of a Claim does not provide the Trust with a duly completed and executed Form W-9, Form W-8 or other requested tax form within such sixty (60) day period, the Liquidating Trust may, in its sole discretion (a) make such Distribution net of applicable withholding or (b) reserve such Distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Combined Disclosure Statement and Plan, (ii) any such Distribution shall revert to the Trust for all purposes, including for Distribution on account of other Allowed Claims, notwithstanding any federal, state, local, provincial, or escheat, unclaimed property or abandoned property law to the contrary, and (iii) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court.

### 13.03   Defenses and Setoff

Nothing contained in this Plan shall constitute a waiver or release by the Debtor, the Estate, or the Liquidating Trust of any right rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Liquidating Trust may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtor, the Estate, or the Liquidating Trust may have against the Holder of such Claim or Interest.

### 13.04   Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Maryland, without giving effect to the principles of conflicts of law thereof.

### 13.05   Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

37

89856667.15

### 13.06   Transfer of Claims and Distribution Record Date

As of 4:00 p.m. (prevailing Eastern time) on the Distribution Record Date, the Claims register maintained by the Claims Agent shall be deemed closed with respect to transfer of Claims.  The Liquidating Trust shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those Holders who are Holders of Claims as of 4:00 p.m. (prevailing Eastern time) on the Distribution Record Date. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 4:00 p.m. (prevailing Eastern time) on the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

### 13.07   Post-Effective Date Service List

Pursuant to Bankruptcy Rule 2002 and any applicable Local Rule, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee, counsel to the Debtor, counsel for the Liquidating Trustee, and all persons on the Bankruptcy Rule 2002 service list. **With the exception of the Debtor and the U.S. Trustee, any Person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidating Trustee within thirty (30) days after the Effective Date. Persons who do not file a request for continued service within thirty (30) days after the Effective Date shall be removed from the Debtor's Bankruptcy Rule 2002 service list.**

### 13.08   Notices

To be effective, any notice or other document required by the Plan or the Confirmation Order to be served on or delivered to counsel to the Debtor, the Creditors' Committee, and the U.S. Trustee, excluding any document that must be or is filed through the Bankruptcy Court's CM/ECF system, must be sent by email to:

<u>**If to the Debtor**</u>

Email: cward@polsinelli.com
Email: skatona@polsinelli.com

<u>**If to the Creditors' Committee:**</u>

Email: jcarr@kelleydrye.com
Email: swilson@kelleydrye.com
Email: gleibowitz@coleschotz.com

<u>**If to the U.S. Trustee:**</u>

Email: Hugh.M.Bernstein@usdoj.gov

Case 23-12237    Doc 389    Filed 11/16/23    Page 58 of 98

### 13.09   Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Confirmation Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

### 13.10   Severability of Plan Provisions

If, before the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Debtor. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. **The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (iii) non-severable and mutually dependent.**

### 13.11   Exhibits

All exhibits and documents to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan. The Debtor reserves the right to amend the Exhibits to the Plan any time prior to Confirmation, subject to appropriate notice.

### 13.12   U.S. Trustee Fees

The Debtor shall pay all amounts owed to the U.S. Trustee on account of disbursements up to and including the Effective Date in accordance with the Plan. After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court quarterly financial reports in a format prescribed by the U.S. Trustee, and the Liquidating Trust, to the extent that a liquidating trust is required to pay U.S. Trustee Fees, shall pay post-Effective Date quarterly fees to the U.S. Trustee until a final decree is entered or the Chapter 11 Case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

### 13.13   No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, or the Creditors' Committee with respect to any matter set forth herein, including, without limitation,

89856667.15

liability on any Claim or Equity Interest or the propriety of the classification of any Claim or Equity Interest.

### 13.14  Recommendation

In the opinion of the Debtor, the Combined Disclosure Statement and Plan is superior and preferable to the alternatives described in the Combined Disclosure Statement and Plan. Further, the value being provided to creditors under the Combined Disclosure Statement and Plan was subject to a competitive process. Accordingly, the Debtor recommends that Holders of Claims entitled to vote on the Combined Disclosure Statement and Plan vote to accept the Combined Disclosure Statement and Plan and support Confirmation.

Dated: September 19, 2023                     */s/ Stanley W. Mastil*
                                              Stanley W. Mastil
                                              Authorized Party
                                              *ESCO, Ltd.*

40

**<u>Exhibit A</u>**
**Liquidating Trust Agreement**

## LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This liquidating trust agreement and declaration of trust (the "Agreement"), dated as of [•], 2023, is made by ESCO, Ltd. d/b/a Shoe City (the "Debtor"), and Steven Balasiano (the "Trustee," and together with the Debtor, each, a "Party" and collectively, the "Parties").

## RECITALS

A.     On March 31, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Case No. 23-12237 (DER).

B.     On [•], 2023, the Bankruptcy Court entered an order (the "Confirmation Order"),[1] confirming the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Debtor ESCO, Ltd.*[2]

C.     The Plan became effective on [•], 2023 (the "Effective Date").

D.     The Plan provides for the establishment of the Liquidating Trust ("Trust") effective on the Effective Date of the Plan.

E.     The Confirmation Order provides for the appointment of the Trustee as Liquidating Trustee of the Trust, and this Agreement provides for the appointment as necessary of any successor trustee of the Trust.

F.     The Trust is established for the benefit of the Liquidating Trust Beneficiaries entitled to Distributions under the Plan (collectively, "Beneficiaries").

---

[1]     Docket No. [•].

[2]     Docket No. 347.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

G.      The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Trust Assets (defined below) for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

H.      Pursuant to the Plan, the Debtor, Trust, Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

I.      The Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code of 1986, as amended ("IRC"), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

J.      The Trust is further intended to be exempt from the requirements of (i) the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, pursuant to section 1145 of the Bankruptcy Code, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained

2

in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtor and the Trustee enter into this Agreement to effectuate the Distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to section 6.05 of the Plan, paragraph [•] of the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidating Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "Trust Assets") are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, solely for the benefit of the Beneficiaries and for no other party; provided, however, that in the event that that the Wind-Down Reserve is overfunded, prior to the termination of the Trust, the Trustee shall pay any excess funds in the Wind-Down Reserve to the Reorganized Debtors.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER
## DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1    Recitals.  The Recitals are incorporated into and made terms of this Agreement.

1.2    Interpretation; Headings.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and

vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.3     Construction of Agreement. This Agreement shall not be construed to impair or limit in any way the rights of any Entity under the Plan.

1.4     Conflict Among Plan Documents. In the event of any inconsistency between the Plan and the Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence.

## ARTICLE II
## ESTABLISHMENT OF TRUST

2.1     Effectiveness of Agreement; Name of Trust. This Agreement shall become effective on the Effective Date. The Trust shall be officially known as the "Shoe City Liquidating Trust."

2.2     Purpose of Trust. The Debtor and the Trustee, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3     Transfer of Trust Assets.

2.3.1     Conveyance of Liquidating Trust Assets. Pursuant to the Plan, the Debtor hereby grants, releases, assigns, transfers, conveys and delivers, on behalf of the Beneficiaries, the Liquidating Trust Assets to the Trust as of the Effective Date in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement and the Plan. The

4

Debtor shall execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtor shall take or cause to be taken such further action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

        2.3.2   <u>Title to Trust Assets</u>. All of the Debtor's right, title and interest in and to the Liquidating Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust, free and clear of all liens, claims, encumbrances and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties and pursue, assert and/or and exercise all rights of setoffs and recoupment and defenses of the Debtor or its Estate to any counterclaims that may be asserted by any and all defendants as to Causes of Action and to Claims asserted against the Debtor or its Estate. On the Effective Date, the Trust shall stand in the shoes of the Debtor for all purposes with respect to the Trust Assets and administration of Claims. To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtor to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in section 2.3, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Trustee on behalf of the Trust hereby

accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4    Capacity of Trust.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5    Cooperation of Plan Administrator and Debtor.  The Debtor and its professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtor to the Trust of administration of the Trust Assets.

2.6    No Retention of Excess Cash.  Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities or to maintain the value of the Trust Assets during liquidation other than reserves established pursuant to sections 3.2.12, 3.2.20 and/or 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.7    Acceptance by Trustee.  The Trustee accepts its appointment as Liquidating Trustee of the Trust.

6

## ARTICLE III
## ADMINISTRATION OF TRUST

3.1    <u>Rights, Powers, and Privileges of Trustee Generally</u>.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1    <u>Power to Contract</u>.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Entity under the Plan, Confirmation Order, or this Agreement.

3.2    <u>Powers of Trustee</u>.  Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following

actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust or the duties of the Trust as set forth in the Plan, without further Bankruptcy Court approval unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1    hold legal title to the Trust Assets and to any and all rights of the Debtor and the Beneficiaries in or arising from the Trust Assets;

3.2.2    receive, manage, invest, supervise, protect, and where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of section 3.7 hereof;

3.2.3    open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4    cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

3.2.5    collect, sell, liquidate, transfer, assign, distribute and liquidate all Trust Assets on such terms as the Trustee deems necessary, appropriate or desirable;

3.2.6    protect and enforce the rights to the Trust Assets vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.7    investigate any Trust Assets, and any objections to Claims, and cause the Trust to seek the examination of any Entity pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.2.8   cause the Trust to employ and pay professionals, disbursing agents, and other agents and third parties pursuant to the Plan and this Agreement as Liquidating Trust Expenses;

3.2.9   cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the Trust Assets as Liquidating Trust Expenses;

3.2.10 cause the Trust to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve all Causes of Actions that are Trust Assets;

3.2.11  calculate and make all Distributions on behalf of the Trust provided for in, or contemplated by, the Plan and this Agreement;

3.2.12  establish, adjust, and maintain reserves for Disputed Claims required to be administered by the Trust;

3.2.13  cause the Trust to withhold from the amount distributable to any Entity the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws, regulations, rules, rulings, directors or other requirements of a Governmental Unit, and all distributions shall be net of the actual and reasonable costs of making such distributions;

3.2.14  in reliance upon the Debtor's schedules and the official Claims register maintained in the Debtor's chapter 11 case, review, and where appropriate, cause the Trust to allow, estimate or object to Claims, and, supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed Claims required to be administered by the Trust;

9

3.2.15  in reliance upon the Debtor's schedules and the official Claims register maintained in the Debtor's chapter 11 case, maintain a register evidencing the Liquidating Trust Interests and, in accordance with section 3.8 of this Agreement, such register may be the official Claims register maintained in the Debtor's chapter 11 case to the extent of any General Unsecured reflected thereon;

3.2.16  cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Regulation section 1.671-4 pursuant to and in accordance with Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust;

3.2.17  cause the Trust to file any and all remaining tax returns for the Debtor and the Estate, as applicable; provided, however, that notwithstanding any other provision of this Agreement, neither the Trust nor the Trustee shall have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtor's tax return(s) that are due to be filed after the Effective Date or for any tax liability related thereto.

3.2.18  cause the Trust to abandon or donate to a charitable organization any Trust Assets that the Trustee believes, in good faith, are burdensome to the Debtor or to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.2.19  cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

10

3.2.20  cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.21  pursuant to Section 6.10 of the Plan, act for the Debtor in the same capacity and have the same rights and powers as applicable to an officer, director, or Holder of an Interest in the Debtor, subject to the provisions of the Plan;

3.2.22  cause the winding up and dissolution of the Debtor;

3.2.23  move for a final decree closing the Debtor's chapter 11 case;

3.2.24  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.25  exercise, implement, enforce, and discharge all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.2.26  take all other actions consistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3  <u>Trustee as Representative of the Estates</u>.  The Trust shall be vested with and entitled to assert all claims and causes of action that may constitute setoffs and defenses of the Debtor or the Trust to any Claims, and the Trust, acting by and through the Trustee, shall be the sole representative of the Estate under section 1123(b)(3) of the Bankruptcy Code with respect to any such claims or causes of action.

3.4  <u>Abandonment</u>.  If, in the Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right

11

to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization.

3.5    Responsibility for Administration of Claims.  From and after the Effective Date, the Trust shall become responsible for administering and paying Distributions to the Beneficiaries and to other Holders of Allowed Claims.  The Trust shall have the exclusive right to object to the allowance of any Claim on any ground, to file, withdraw or litigate to judgment objections to, to settle or compromise any Disputed Claims without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Debtor and its Estate.  The Trust shall also be entitled to assert all of the Debtor's and the Estate's rights under, without limitation, section 558 of the Bankruptcy Code.  The Trust may also seek estimation of any Claims under and subject to section 502(c) of the Bankruptcy Code.

3.6    Agents and Professionals.  The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtor or the Creditors' Committee.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trust or Trustee from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust.  The Trust may pay the reasonable salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of business as Liquidating Trust Expenses.

3.7    Safekeeping and Investment of Trust Assets.  All moneys and other assets received by the Trust, by and through the Trustee or otherwise, shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not

be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan. Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Trust or Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, and shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit or money market funds, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; provided, however, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Power, and Trusts Law of New York shall not apply to this Agreement. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8     Maintenance and Disposition of Trust and Debtor Records. The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust. The Trust may, but has no obligation to, engage a claims agent (including, but not limited to, the Claims Agent) to continue to maintain and update the Claims register maintained in the Debtor's chapter 11 case throughout the administration of the Trust. To the extent of any General Unsecured Claims reflected thereon, the Claims register

may serve as the Trustee's register of Liquidating Trust Interests held by Beneficiaries.  The books and records maintained by the Trustee and any records of the Debtor transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.9     Reporting Requirements.  The Trustee shall provide the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.  In addition, the Trustee shall file all post-confirmation quarterly reports required in the Debtor's chapter 11 case consistent with Section 13.12 of the Plan until the date a final decree closing the case is obtained.

3.10     No Bond Required; Procurement of Insurance. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be a Liquidating Trust Expense and paid out of Trust Assets.

**ARTICLE IV**
**DISTRIBUTIONS**

4.1     Distribution and Reserve of Trust Assets.  Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets, subject to the reserves required under the Plan or this Agreement.

14

4.1.1    <u>Distributions</u>.   The Trustee shall cause the Trust to distribute, at least annually, the Trust's net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet Liquidating Trust Expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude Distributions to Beneficiaries.

4.1.2    <u>Reserves; Pooling of Reserved Funds</u>.   Before any Distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain the a reserve in an amount sufficient to meet any and all Liquidating Trust Expenses of the Trust.  In accordance with section 3.2.12 and 3.2.20 of this Agreement, the Trust may also maintain as necessary one or more reserves for Disputed Claims of Beneficiaries and other Claims required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any Distribution pending the Trust's determination of whether to object to a Claim.  Any such withheld Distribution shall become part of the Trust's reserve for Disputed Claims and shall be distributed to the appropriate Holder no later than the first Distribution Date after a decision is made not to object to the pertinent Claim or any such Claim becomes Allowed.  The Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; <u>provided</u>, <u>however</u>, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.3    <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the Distributions.

4.1.4    <u>Right to Rely on Professionals</u>.  Without limitation of the generality of section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

4.2    <u>Method and Timing of Distributions</u>.  Distributions to Beneficiaries will be made from the Trust in accordance with the terms of the Plan (in particular, Article VIII) and this Agreement.    The Trust may engage disbursing agents and other Persons to help make Distributions.

4.3    <u>Withholding from Distributions</u>.  The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.  The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

4.4    <u>Tax Identification Numbers</u>.  As more fully set forth in section 13.02 of the Plan, the Trustee may require any Beneficiary or any other Holder of a Claim to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any Distribution upon receipt of such identification number and/or tax form.  If a Beneficiary or any other Holder of a Claim does not timely provide the Trustee with its taxpayer identification number in the manner and by the 60-day deadline established under the Plan, then, at the sole discretion of

16

the Trust acting by and through the Trustee, (i) the Distribution may be made net of applicable withholding or (ii) the Distribution may be reserved, in which case (a) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, (b) any such Distribution shall revert to the Trust for all purposes, including for Distribution on account of other Allowed Claims, notwithstanding any federal, state, local, provincial, or escheat, unclaimed property or abandoned property law to the contrary, and (c) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court.

      4.5     <u>Unclaimed and Undeliverable Distributions</u>.  If any Distribution to a Beneficiary or other holder of an Allowed Claim is returned to the Trustee as undeliverable or is otherwise unclaimed, no further Distributions to such Beneficiary or Holder shall be made unless and until the Beneficiary or Holder claims the Distributions by timely notifying the Trustee in writing of any information necessary to make the Distribution to the Beneficiary or Holder in accordance with this Agreement, the Plan, and applicable law, including such Beneficiary's or Holder's then-current address or taxpayer identification number.  If a Beneficiary or Holder timely provides the Trustee the necessary information within the 60-day period specified in section 8.02(e) of the Plan, all missed Distributions shall be made to the Beneficiary or Holder  as soon as is practicable, without interest. Undeliverable or unclaimed Distributions shall be administered in accordance with section 8.03(e) of the Plan.

          4.5.1   <u>No Responsibility to Attempt to Locate Beneficiaries or other Holders of Allowed Claims</u>.  The Trustee may, in its sole discretion, attempt to determine a Beneficiary's or Claim Holder's current address or otherwise locate a Beneficiary or Holder, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.5.2    Disallowance of Claims; Cancellation of Corresponding Beneficial Interests.  All General Unsecured Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Trust for all purposes (including, but not limited to, for Distribution to other holders of other Allowed Claims) pursuant to section 8.03(e) or 13.02 of the Plan shall be deemed disallowed and expunged without further action by the Trust or Trustee and without further order of the Bankruptcy Court, and the corresponding Liquidating Trust Interest(s) of the Beneficiary holding such disallowed Claims shall be deemed canceled.  The Holder of any such disallowed General Unsecured Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such General Unsecured Claim.  The Holder of any such Disallowed General Unsecured Claim is forever barred, estopped, and enjoined from receiving any Distributions under the Plan or this Agreement and from asserting such Disallowed General Unsecured Claim against the Trust or Trustee.

4.5.3    Inapplicability of Unclaimed Property or Escheat Laws.  Unclaimed property held by the Trust shall not be subject to any federal, state or provincial escheat, unclaimed property or abandoned property law.

4.6    Voided Checks; Request for Reissuance.  In accordance with section 8.03(e) of the Plan, Distribution checks issued to Beneficiaries and other Holders of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof.  Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary or Holder that was originally issued such check.  All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets under section 4.5 of this Agreement.  The Beneficiary or Holder, as applicable, shall bear all the risk that, and shall indemnify and hold the Trust and Trustee harmless against any loss

18

that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance and the date established by section 8.03(e) of the Plan passes without the check being reissued or cashed.

      4.7    <u>Conflicting Claims</u>.  If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

      4.7.1    The Trustee may elect to cause the Trust to make no payment or Distribution with respect to the beneficial Liquidating Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

      4.7.2    The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the

books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

        4.7.3   In acting or refraining from acting under and in accordance with this section 4.7 of the Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Entity pursuant to Article VI of this Agreement.

        4.7.4   <u>De Minimis Distributions</u>. Consistent with Section 8.02(h) of the Plan, the Trustee shall have no obligation to make a Distribution on account of an Allowed General Unsecured Claim if the amount to be distributed to that holder on the particular Distribution Date is less than $100.00 ("<u>De Minimis Distributions</u>"); provided that if no distribution is made to a holder of an Allowed General Unsecured Claim pursuant to this Section 4.8, the amount of such distribution shall be added to any subsequent distribution(s) to such holder on account of such Allowed Claim until the distribution such holder is entitled to is $100 or higher. In accordance with Section 8.02(h) of the Plan, if as of the final Distribution date, a holder is not entitled to $100 or more on a cumulative basis as set forth above, such De Minimis Distribution shall be cancelled, any such De Minimis Distribution shall vest in the Trust and become available for Distribution to the Holders of other Allowed General Unsecured Claims, and, in such event, the corresponding General Unsecured Claims shall be deemed expunged without further order of the Bankruptcy Court.

        4.8   <u>Priority of Expenses of Trust</u>. The Trust must pay or reserve for all of its expenses before making Distributions.

## ARTICLE V
## BENEFICIARIES

5.1    <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or the Debtors to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a beneficial interest herein which shall, subject to section 4.1 of this Agreement and the Plan, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan.

5.3    <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4    <u>No Right to Accounting</u>.  Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Entity shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Entity.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Trust Assets.

5.5    <u>No Standing</u>.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Entity upon or with respect to the Trust Assets.

21

5.6    <u>Requirement of Undertaking</u>.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; <u>provided</u>, <u>however</u>, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7    <u>Limitation on Transferability</u>.  It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trustee may rely upon such proof without the requirement of any further investigation.

5.8    <u>Exemption from Registration</u>.  The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan or otherwise because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

5.9    <u>Delivery of Distributions</u>.  Subject to the terms of this Agreement, the Trustee shall cause the Trust to make Distributions to Beneficiaries in the manner provided in the Plan.

# ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1    <u>Parties Dealing With the Trustee</u>.  In the absence of actual knowledge to the contrary, any Entity dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets.  There is no obligation of any Entity dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2    <u>Exculpation</u>.  In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee, nor any director, officer, employer, employees, professional, agent, representative, successor, assign, or affiliate of the Trustee  (each, an "<u>Exculpated Party</u>" and collectively, the "<u>Exculpated Parties</u>") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions or investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs and expenses, including reasonable fees and disbursements (collectively referred to herein as "<u>Losses</u>"), whether or not in connection with litigation in which any Exculpated Party is a party or in enforcing this Agreement (including these exculpation provisions), as and when imposed on the Trustee, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Trustee' execution, delivery, and acceptance of or the performance or nonperformance of its obligations under this Agreement, the Plan or the Confirmation Order or as may arise by reason of any action, omission or error of an Exculpated Party; *provided, however*, that the foregoing limitation shall not apply to, Losses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review)

23

to have been primarily and directly caused by the fraud, gross negligence, willful misconduct, or criminal conduct of the Exculpated Party.

6.3 <u>No Liability for Acts of Other Persons</u>. Every act taken or omitted, power exercised or obligation assumed by the Trustee or any other Exculpated Party pursuant to the provisions of this Agreement shall be held to be taken or omitted, exercised or assumed, as the case may be, by the Trustee or any Exculpated Party acting for and on behalf of the Trustee and not otherwise; <u>provided</u>, <u>however</u>, that none of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4 <u>No Liability for Acts of Predecessors</u>. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5 <u>No Liability for Good Faith Error of Judgment</u>. The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6 <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>. Except as otherwise provided herein, the Trustee may conclusively rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties. The Trustee also may engage and consult with its legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered by the Trustee in reliance upon the advice of such counsel, agents, or advisors.

24

6.7     No Liability For Acts Approved by Bankruptcy Court.  The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and the Claims required to be administered by the Trust.  The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.8     No Personal Obligation for Trust Liabilities.  Entities dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Entity in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification.  The Trustee and any director, officer, employee, employer, professional, agent, representative, successor, assign, or affiliate of the Trustee (each, an "Indemnified Party" and, collectively, the "Indemnified Parties") shall, to the fullest extent of the law, be defended, indemnified and held harmless by the Trust from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses (collectively, the "Indemnified Losses"), including but not limited to attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Debtor, the Trust or the implementation or administration of the Plan or this Agreement, other than Indemnified Losses that are the result of fraud, gross negligence, willful misconduct, or criminal conduct of the Indemnified Party.

6.9.1    Expense of Trust; Limitation on Source of Payment of Indemnification.  All indemnification liabilities of the Trust under this section 6.9 shall be expenses of the Trust.  The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of

the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Entity shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

      6.9.2    <u>Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay</u>.  The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party.  The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification.  All invoices for indemnification shall be subject to the approval of the Trustee.  By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

      6.10    <u>No Implied Obligations</u>.  The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

      6.11    <u>Confirmation of Survival of Provisions</u>.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's, the Exculpated Parties' and the Indemnified Parties' heirs and assigns.

# ARTICLE VII
# TAX MATTERS

7.1    <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Liquidating Trust Assets by the Debtor to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the Liquidating Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust.  The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

7.2    <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

7.3    <u>Tax Treatment of Reserves for Disputed General Unsecured Claims</u>.  The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed General Unsecured Claims, including (i) filing a tax election to treat any and all reserves for Disputed General Unsecured Claims as a Disputed Ownership Fund ("<u>DOF</u>") within the meaning of Treasury Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance

27

requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

7.4     <u>Valuation of Trust Assets</u>.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the date of inception of the Trust, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE VIII
### SELECTION, REMOVAL, REPLACEMENT
### AND COMPENSATION OF TRUSTEE

8.1     <u>Initial Trustee</u>.  The initial trustee shall be the Trustee.

8.2     <u>Term of Service</u>.   The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, dissolution, liquidation, incapacity, resignation or removal.   In the event that the Trustee's appointment terminates by reason of death, dissolution, liquidation, incapacity, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.   The provisions of Article VI of this Agreement shall survive the death, dissolution, liquidation, incapacity, resignation or removal of any Trustee.

28

8.3    <u>Removal of Trustee</u>.  Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.4    <u>Resignation of Trustee</u>.  The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court.  The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee.  In the event of a resignation, the resigning Trustee shall render to the U.S. Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

8.5    <u>Appointment of Successor Trustee</u>.  Upon the death, dissolution, liquidation, incapacity, resignation or removal of a Trustee, any party in interest (including, in the case of resignation, the Trustee) may file a motion in the Bankruptcy Court to appoint a successor Trustee.  In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed (i) shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee and (ii) shall not have any liability or responsibility for the acts or omissions of any of its predecessor(s).  Any successor Trustee may be appointed to serve only on an interim basis.

8.6    <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7    <u>Trust Continuance</u>.  The death, dissolution, liquidation, incapacity, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8    <u>Compensation of Trustee and Costs of Administration</u>.  The Trustee shall receive fair and reasonable compensation for its services, which shall be a charge against and paid out of the Trust Assets, as follows: (i) a monthly fee of $5,000, (ii) 3% of the net amount recovered from the pursuit of all Causes of Actions that are Trust Assets, and (iii) reimbursement of reasonable and necessary expenses.  All costs, expenses, obligations and Liquidating Trust Expenses incurred by the Trust or Trustee (or professionals who may be employed by the Trust or Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be reserved for or paid by the Trust, solely from the Trust Assets, prior to any Distribution to the Beneficiaries or to Holders of any Allowed Claims.

8.9    <u>Appointment of Supplemental Trustee</u>.  If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or

limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property. The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

**ARTICLE IX**
**DURATION OF TRUST**

9.1    <u>Duration</u>. Once the Trust becomes effective upon full execution of this Agreement and approval of the Bankruptcy Court, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2    <u>Termination on Payment of Trust Expenses and Distribution of Trust Assets</u>. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the Distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3    <u>Termination after Five Years</u>. If the Trust has not been previously terminated pursuant to section 9.2 hereof, on the fifth anniversary of the Effective Date, the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately

31

thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement, unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court upon motion made within the six-month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Trust Assets.

      9.4    <u>No Termination by Beneficiaries</u>.  The Trust may not be terminated at any time by the Beneficiaries.

      9.5    <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, which may be a motion for a final decree, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

# ARTICLE X
## MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>.    The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Holders at the addresses appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Trust or Trustee:
>
> [•]
>
> with a copy to its counsel:
>
> [•]

or to such other address as may from time to time be provided in written notice by the Trustee.

10.3    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, without giving effect to rules governing the conflict of laws.

10.4    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof,"

"herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6    <u>Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Entity can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation order and this Agreement.

10.7    <u>Amendment</u>.  This Agreement may be amended by written agreement of the Trustee and the Debtor or by order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

10.8    <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

10.10    <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.11    <u>Further Assurances</u>.  Without limitation of the generality of section 2.4 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take

34

all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12   Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13   Jurisdiction.  The Bankruptcy Court shall have jurisdiction regarding the Debtors Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Debtor's chapter 11 case, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

ESCO, Ltd. d/b/a Shoe City

By: _____

Its: _____

Steven Balasiano, not individually, but solely as Trustee of the Shoe City Liquidating Trust

By: _____

Its: _____

36

## Exhibit B

### Liquidation Analysis

**Disclaimer**

This liquidation analysis and the conclusions set forth herein represent the Debtor's best judgment regarding the results of such a liquidation. This liquidation analysis was prepared for the sole purpose of assisting the Bankruptcy Court and holders of impaired claims or Interests in making this determination and should not be used for any other purpose.

Nothing contained in this liquidation analysis is intended as or constitutes a concession or admission for any purpose other than the presentation of a hypothetical Chapter 7 liquidation analysis for purposes of meeting the requirements of § 1129(a)(7) of the Bankruptcy Code. Capitalized terms used, but not otherwise defined herein, shall have the meaning ascribed to such terms in the Combined Disclosure Statement and Plan.

The liquidation analysis is shown on a consolidated basis and reflects the estimated cash proceeds, net of liquidation-related costs, that would be available for Distribution to creditors if the Debtor liquidated under Chapter 7 of the Bankruptcy Code commencing on September 19, 2023. Also reflected is an analysis of estimated cash proceeds available under the Debtor's Plan for purposes of comparison. A number of estimates and assumptions underlie the analysis that, while considered reasonable, are inherently subject to significant uncertainties and contingencies beyond the control of the Debtor and its advisors.

**THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTOR WAS, IN FACT, TO LIQUIDATE UNDER CHAPTER 7.**

**Conversion to Chapter 7 and Appointment of a Chapter 7 Trustee**

This liquidation analysis assumes that the Debtor's liquidation would commence under the direction of a Chapter 7 trustee and would continue for a period of at least four months. During this time, it is assumed that the Chapter 7 trustee would hire professionals to effectuate an estate liquidation. All of the Debtor's remaining Assets would be liquidated and the Cash proceeds, net of liquidation-related costs, would then be distributed to creditors in accordance with the priorities established under the Bankruptcy Code.

The liquidation analysis contains an estimate of the value of claims that ultimately would become Allowed Claims based on the Debtor's books and records. The Debtor has not evaluated, nor has the Bankruptcy Court determined, the amount of each such Claim. Accordingly, the final amount of Allowed Claims may differ from the amounts presented in this liquidation analysis.

89856667.15

**ESCO, Ltd.**

Liquidation Analysis ($000's)

| Assets | Asset Book Value | | Recoverable Value | | Plan | | Chapter 7 | |
|---|---|---|---|---|---|---|---|---|
| Cash | $ | 650.0 | $ | 650.0 | $ | 650.0 | $ | 650.0 |
| Other Assets, including Causes of Action (A) | | Unknown | | Unknown | | Unknown | | Unknown |
| Gross Liquidation Proceeds | $ | 650.0 | $ | 650.0 | $ | 650.0 | $ | 650.0 |
| | | | | | | | | |
| Less: Adminstrative Expense Claims | | | | | | | | |
| 503(b)(9) Claims | | | | | $ | (18.0) | $ | (18.0) |
| Chapter 7 Trustee Commissions | | | | | $ | - | $ | (32.5) |
| Professional Fees | | | | | | (250.0) | | (500.0) |
| Wind-down costs | | | | | | (200.0) | | - |
| United States Trustee Fees | | | | | | (25.0) | | (25.0) |
| Total Administrative Expense Claims | | | | | $ | (493.0) | $ | (575.5) |
| | | | | | | | | |
| Net proceeds Available for Unsecured Creditors | | | | | $ | 157.0 | $ | 74.5 |
| | | | | | | | | |
| General Unsecured Claims | $ | 17,285.0 | $ | 17,285.0 | $ | (157.0) | $ | (74.5) |
| Recovery Percentages | | | | | | 0.9% | | 0.4% |

(A) Does not include recoveries by Liquidating Trustee for causes of action

91102173.1